# United States Court of Appeals for the Federal Circuit

---

**TIGER LILY VENTURES LTD.,**
*Appellant*

**v.**

**BARCLAYS CAPITAL INC., BARCLAYS PLC,**
*Cross-Appellants*

---

2021-1107, 2021-1228

---

Appeals from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in Nos. 91219477, 91219478, 91219549.

---

Decided: June 1, 2022

---

ROBERT GARSON, Garson Segal Steinmetz Fladgate LLP, New York, NY, argued for appellant. Also represented by KEVIN KEHRLI, JOHN R. LANE.

ERIC J. SHIMANOFF, Cowan, Liebowitz & Latman, PC, New York, NY, argued for cross-appellants.

---

Before LOURIE, BRYSON, and PROST, *Circuit Judges*.

LOURIE, *Circuit Judge*.

Tiger Lily Ventures Ltd. ("Tiger Lily") appeals from the decision of the United States Patent and Trademark Office Trademark Trial and Appeal Board ("the Board") sustaining two oppositions that Barclays Capital Inc. ("Barclays") had filed against Tiger Lily's applications for registration of the standard character mark "LEHMAN BROTHERS." *Barclays Capital Inc. v. Tiger Lily Ventures Ltd.*, Trademark L. Guide ¶ 63,767 (T.T.A.B. Sept. 30, 2020) J.A. 30449–511 ("*Board Decision*"). Tiger Lily also appeals from the Board's dismissal of its opposition to Barclays' application for registration of the standard character mark "LEHMAN BROTHERS." *Id.* For the reasons set forth below, we affirm.

## BACKGROUND

### I. Factual Background and Procedural History

Until 2008, Lehman Brothers[1] was one of the largest investment banks in the United States, with hundreds of billions of dollars in assets under management and more than 25,000 employees in offices worldwide. Lehman Brothers owned trademark rights in connection with its name, including a number of federal trademark registrations for the standard character mark LEHMAN BROTHERS.

Immediately after Lehman Brothers filed for bankruptcy in 2008, it sold several of its businesses and other assets to Barclays for approximately $1.5 billion. As part

---

[1] We use the term "Lehman Brothers" to refer collectively to the company Lehman Brothers Holdings Inc. ("LBHI"), along with its current and former subsidiaries and affiliates (including, for example, LBHI's brokerage subsidiary Lehman Brothers Inc.). In contrast, we use the capitalized term "LEHMAN BROTHERS" to refer to the standard character mark for which both parties in this appeal have sought registration.

of that sale, Lehman Brothers assigned to Barclays all of its LEHMAN BROTHERS trademarks and accompanying goodwill. Shortly thereafter, Barclays granted Lehman Brothers a worldwide, non-exclusive license to use the LEHMAN BROTHERS trademarks in connection with Lehman Brothers' retained and continuing businesses and operations. The term of the license was two years for use in connection with Lehman Brothers' investment banking and capital markets businesses and perpetual for use in connection with other Lehman Brothers businesses and operations. Over the years that followed, however, Barclays allowed all of its acquired LEHMAN BROTHERS trademark registrations to expire.

On March 6, 2013, Tiger Lily, a company with no corporate affiliation to Lehman Brothers or Barclays, filed Application No. 85/868,892 for registration of the standard character mark LEHMAN BROTHERS for beer and spirits. A few months later, on October 2, 2013, Barclays filed Application No. 86/081,143 to register the standard character mark LEHMAN BROTHERS for use in connection with various financial services. And not long after that, on June 2, 2014, Tiger Lily filed Application No. 86/298,069 for registration of the same standard character LEHMAN BROTHERS mark for bar services and restaurant services.

On November 24, 2014, Barclays filed Notices of Opposition to Tiger Lily's applications alleging, among other things, that Tiger Lily's LEHMAN BROTHERS marks are likely to cause confusion with Barclays' LEHMAN BROTHERS marks. *Board Decision*, slip op. at 4. Less than a week later, Tiger Lily filed a Notice of Opposition to Barclays' application alleging, among other things, that Barclays lacked a bona fide intent to use the LEHMAN BROTHERS mark for which it was applying for registration. *Id.* The Board consolidated the three oppositions into one proceeding. *Id.*

## *II. Board Decision*

The Board first addressed Barclays' oppositions to Tiger Lily's applications for registration. *See id.* at 26–58. Because all of Barclays' registrations for LEHMAN BROTHERS and related marks had expired, the Board began by considering whether Barclays had prior ownership of a common law trademark right, and particularly Tiger Lily's argument that Barclays had abandoned its rights in the LEHMAN BROTHERS mark. *Id.* at 26. The Board found that Tiger Lily failed to show abandonment because LEHMAN BROTHERS continues to function as a mark for Barclays. *Id.* at 36. Because Tiger Lily's earliest alleged use of the mark was the March 6, 2013 filing date of its earliest-filed application, which was long after Lehman Brothers began using the LEHMAN BROTHERS mark, the Board found that Barclays had shown prior use of the mark for purposes of its oppositions. *Id.* at 38.

Having found that Barclays had priority of use, the Board proceeded to analyze the likelihood of confusion using the factors set forth in *In re E.I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361 (CCPA 1973) ("the *DuPont* factors"). *See Board Decision*, slip op. at 38. After noting that Tiger Lily's standard character LEHMAN BROTHERS marks are identical to Barclays' standard character LEHMAN BROTHERS marks, *id.* at 39, the Board considered the "similarity or dissimilarity and nature of the goods or services as described in [the] application or registration." *Id.* at 40. The Board found:

> The goods and services identified in Tiger Lily's applications are beer and spirits, and bar services and restaurant services. Barclays' services are various financial and investment related services. While the parties['] goods and services are distinctly different, goods and services need not be identical or even competitive in nature to support a finding of likelihood of confusion. Customers encountering

> Tiger Lily's goods and services under the well-known LEHMAN BROTHERS mark would be likely to mistakenly assume that Tiger Lily's goods are in some way related to Barclays.

*Id.* at 40–41.

In the context of its analysis, the Board considered evidence submitted by Barclays showing the use of its LEHMAN BROTHERS mark in connection with a diverse set of goods. For example, Barclays provided evidence of promotional materials distributed by Lehman Brothers (including whisky decanters, wine gift sets, wine books, wine carriers, and coasters), which the Board noted are still collected, sold, and traded by members of the consuming public. *Id.* at 42. Barclays also provided evidence of the prevalence of its LEHMAN BROTHERS mark in pop culture, including movies, television shows, and music. *Id.* at 46–47. Relatedly, Barclays provided extensive evidence of well-known third-party marks that have been registered and used both in connection with financial services and in connection with alcoholic beverages, food, bar services, and restaurant services. *See id.* at 43–46 n.68.

The Board noted that Tiger Lily did not dispute the legacy of Lehman Brothers, and specifically that Tiger Lily "admits that it seeks to draw a connection between its goods and services and the financial and investment business LEHMAN BROTHERS, and only filed its application when it believed that the LEHMAN BROTHERS mark was abandoned." *Id.* at 48 (citing testimony from Tiger Lily's director). Thus, the Board found, based on the evidence, "consumers would view Tiger Lily's goods and services as the types of goods and services that owners of well-known marks, such as Barclays, could expand their product lines to cover." *Id.*

After completing its analysis of the likelihood of confusion, the Board turned to the three other grounds set forth in Barclays' opposition, namely, false suggestion of a

connection, dilution, and lack of bona fide intent. *See id.* at 52–58. The Board found that Barclays failed to prove the elements required for each of these claims. *Id.* For the false suggestion claim, the Board found a lack of evidence that Barclays had developed a public identity or persona as LEHMAN BROTHERS. *Id.* at 54. For the dilution claim, the Board found that Barclays failed to produce sufficient evidence regarding the extent of actual recognition of the LEHMAN BROTHERS mark and thus failed to show that the mark is still famous for dilution purposes. *Id.* at 56. And for the lack of bona fide intent claim, the Board credited the unchallenged testimony of Tiger Lily's director demonstrating that Tiger Lily intended to make commercial use of the LEHMAN BROTHERS mark. *Id.* at 57–58.

Finally, the Board turned its attention to Tiger Lily's opposition to Barclays' application. Regarding Tiger Lily's claim that Barclays lacked a bona fide intent to use the LEHMAN BROTHERS mark for the services identified in its application, the Board found that the totality of circumstances—including Barclays' ongoing business in the financial services industry under its other marks as well as active licenses involving the LEHMAN BROTHERS mark—provided sufficient evidence of a good faith intention to eventually use the mark in a commercial sense. *Id.* at 60–61. Regarding Tiger Lily's fraud claim, the Board found that Tiger Lily could not prevail because it was based on the alleged lack of bona fide intent (which the Board rejected) and because Tiger Lily failed to provide clear evidence that Barclays made false statements in support of its application. *Id.* at 63. Regarding Tiger Lily's likelihood of confusion claim, the Board found that Tiger Lily did not show priority of use of the LEHMAN BROTHERS mark. *Id.*

In view of its findings, the Board sustained Barclays' oppositions on the grounds of likelihood of confusion but dismissed Barclays' oppositions on the grounds of false suggestion of a connection, dilution, and lack of bona fide

intent. *Id.* And the Board dismissed Tiger Lily's opposition in its entirety. *Id.* Tiger Lily appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

## DISCUSSION

On appeal, Tiger Lily raises a number of challenges against the Board's decision. Regarding the Board's decisions sustaining Barclays' oppositions against Tiger Lily's applications for registration, Tiger Lily primarily challenges the Board's decisions on two bases. First, Tiger Lily argues that the Board erred in its determination that Barclays did not abandon its rights in the LEHMAN BROTHERS mark and, relatedly, that the Board erred in finding that Barclays established priority with respect to the LEHMAN BROTHERS mark. And second, Tiger Lily argues that the Board erred in finding that its proposed mark for beer and spirits and its proposed mark for bar services and restaurant services would cause a likelihood of confusion with Barclays' LEHMAN BROTHERS mark.[2]

---

[2] There was some confusion during the oral argument regarding the Board's statement that Tiger Lily admitted that "[i]ts proposed services in Application No. Serial No. 86298069," namely bar services and restaurant services, "are services that consumers would perceive as being related to, similar to or an extension of the goods and services that have been, could be and are used, offered in connection or associated by consumers with [Barclays'] LEHMAN Marks, including the mark LEHMAN BROTHERS." *Board Decision*, slip op. at 6 (fourth bullet point); Oral Arg. at 8:05–9:00, 12:21–12:43, 29:30–29:45, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=21-1107_04052022.mp3. The confusion stems from the fact that Tiger Lily filed two answers prior to the consolidation of the oppositions into one proceeding. *See* J.A. 205–18; J.A. 219–32. As the source for the supposed admission, the Board cited "paragraph 47" in Tiger Lily's answer in

Regarding the Board's dismissal of Tiger Lily's own opposition to Barclays' application for registration, Tiger Lily argues that the Board erred in finding that Barclays had bona fide intent to use the LEHMAN BROTHERS mark in commerce.  Finally, as a general challenge to the proceedings below, Tiger Lily contends that the Board erred by failing to strike certain testimony from Barclays' witnesses.

We review the Board's legal conclusions *de novo* and its factual findings for substantial evidence.  *Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 1371 (Fed. Cir. 2018) (citing *In re N.C. Lottery*, 866 F.3d 1363, 1366 (Fed. Cir. 2017)).  "Substantial evidence is 'such relevant evidence as a reasonable mind would accept as adequate to support a conclusion.'" *Stone Lion Capital Partners, L.P. v. Lion Capital LLP*, 746 F.3d 1317, 1321 (Fed. Cir. 2014) (quoting *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  We review the Board's evidentiary rulings for abuse of discretion.  *Chen v. Bouchard*, 347 F.3d 1299, 1307 (Fed. Cir. 2003).  With these standards in mind, we address each of Tiger Lily's challenges in turn.

---

Opposition No. 91219477, in which Tiger Lily stated that it "admits the allegations contained in Paragraph 47 of the Consolidated Notice of Opposition." J.A. 199.  But the relevant allegation by Barclays appeared in Paragraph 47 of its Notice of Opposition in Opposition No. 91219478, *see* J.A. 103, in response to which Tiger Lily stated that it "denies the allegations contained in Paragraph 47 of the Notice of Opposition as they are both errant and preposterous." J.A. 215.  Accordingly, we attribute no substantive significance to any alleged admission on this point, and we consider the likelihood of confusion on the merits.

I

We first consider Tiger Lily's challenge that the Board erred in its determinations regarding abandonment and priority. Under the Lanham Act, a party may file an opposition on the basis of "a mark or trade name previously used in the United States by another and not abandoned." 15 U.S.C. § 1052(d). Abandonment of a trademark is a question of fact, which we review for substantial evidence. *On-Line Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1087 (Fed. Cir. 2000).

A trademark is considered "abandoned" if its "use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127. There are two elements to a claim for abandonment: (1) nonuse; and (2) intent not to resume use. *See Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGaA v. New Millennium Sports, S.L.U.*, 797 F.3d 1363, 1368 (Fed. Cir. 2015) (citing J. Thomas McCarthy, 3 McCarthy on Trademarks and Unfair Competition § 17:26 (4th ed. 2015)). Regarding the "nonuse" element, our case law suggests that even limited use can be sufficient to avoid a finding that use of a mark has been "discontinued" under the statute. *See, e.g.*, *Person's Co. v. Christman*, 900 F.2d 1565, 1571 (Fed. Cir. 1990) ("Although sales by Christman and his corporation Team Concepts, Ltd. were often intermittent and the inventory of the corporation remained small, such circumstances do not necessarily imply abandonment. There is also no rule of law that the owner of a trademark must reach a particular level of success, measured either by the size of the market or by its own level of sales, to avoid abandoning a mark." (citing *Wallpaper Mfrs., Ltd. v. Crown Wallcovering Corp.*, 680 F.2d 755, 759 (CCPA 1982))).

According to Tiger Lily, the evidence shows that Barclays abandoned its mark by allowing its registrations to expire and affirmatively disavowing its association with Lehman Brothers across all of Barclays' businesses. Tiger

Lily insists that the Board erred by placing undue emphasis on Lehman Brothers' actions in winding up its business during bankruptcy and by drawing impermissible and unreasonable inferences based on a license to Bloomberg LP that fails to identify any specific mark in the agreement.

Barclays responds that Lehman Brothers has continuously used the mark in connection with numerous public-facing financial and business transactions since it licensed the use of the LEHMAN BROTHERS mark from Barclays immediately after the asset sale in 2008. For example, under its license from Barclays, Lehman Brothers has used the LEHMAN BROTHERS mark in signage, email signatures, web addresses, reports, correspondence, business cards, and corporate and regulatory filings. Barclays also contends that Barclays itself has used the mark in connection with its own financial services, including legacy LEHMAN BROTHERS research materials. Barclays argues that the ongoing bankruptcy proceedings of individual Lehman Brothers affiliates, which will conclude on unspecified dates in the future, do not negate the dispositive fact that Lehman Brothers continues to use the LEHMAN BROTHERS mark in connection with financial transactions just as it has always done. And regarding the Bloomberg LP license, Barclays contends that, at a minimum, it disproves any notion that Barclays intends not to resume use of trademarks it acquired from Lehman Brothers.

We agree with Barclays that substantial evidence supports the Board's conclusion that there has been no abandonment of the LEHMAN BROTHERS mark. The decisive factor is Tiger Lily's apparent acknowledgment that the LEHMAN BROTHERS mark has been used continuously in the course of winding up the affairs of at least one Lehman Brothers affiliated company. *See, e.g.*, Appellant Br. at 20–21. As Barclays argued:

When Lehman Brothers filed for bankruptcy in 2008, it was left with hundreds of billions of dollars'

> worth of assets.  Since that time, it has basically
> been acting as an asset manager.  Investing in,
> maintaining, [and] selling its vast portfolio of com-
> mercial real estate, securities, [and] derivative
> swaps.  All of this has been a service provided for
> the benefit of the creditors of Lehman Brothers.

Oral Arg. at 13:29–13:58.  By admitting that Lehman Brothers has continued to use the LEHMAN BROTHERS mark in at least this context, which is similar in nature to the context in which Lehman Brothers used the mark for decades, Tiger Lily essentially concedes that it cannot prove the "nonuse" element of its claim that the LEHMAN BROTHERS mark was abandoned under 15 U.S.C. § 1127.

Tiger Lily attempts to focus on the fact that the bankruptcy proceedings will eventually end and that Lehman Brothers is involved in the type of bankruptcy from which it will not emerge as a continuing enterprise.  *See, e.g.*, Oral Arg. at 3:39–4:22.  But we are unpersuaded that these facts are material to the issue at hand.  Regardless whether Lehman Brothers will cease to exist after the bankruptcy concludes, it is not disputed that the bankruptcy has not yet concluded, and the record lacks clear evidence as to when any such conclusion is expected.  Thus, any evidence about Lehman Brothers' intentions after the conclusion of the bankruptcy proceedings relates only to the second element of Tiger Lily's abandonment claim—*i.e.*, whether Barclays intends not to resume use of the LEHMAN BROTHERS mark.  As discussed above, Tiger Lily has failed to show that use of the mark has yet been discontinued, and indeed Tiger Lily appears to concede that it has not.  Evidence relating to the second element, post-bankruptcy use, is thus irrelevant.

Additionally, separate from Lehman Brothers' use of the mark, the evidence shows that Barclays itself has continued to use the LEHMAN BROTHERS mark.  *See, e.g.*, J.A. 18152, 18160–62 (declaration of a Barclays' Vice

President that Barclays maintains a Lehman Brothers website, offers legacy LEHMAN BROTHERS research materials, uses Lehman Brothers' Market Participant Identifier code, and maintains worldwide LEHMAN BROTHERS domain name and trademark registrations).    We acknowledge that Barclays' use of the mark has not been extensive, and it is possible that Barclays cannot quantify any financial success that may be specifically attributable to its offering of legacy Lehman Brothers market research materials.    But under the law, Barclays' continued use of the mark, even if limited, is sufficient to avoid a finding that the mark has been abandoned.    *See Person's*, 900 F.2d at 1571.

Tiger Lily acknowledges that the issues of priority and abandonment "are the obverse and reverse of the same coin" in this case.    *See* Appellant Br. at 23.    Accordingly, because we find that substantial evidence supports the Board's finding that Barclays has not abandoned its rights in the LEHMAN BROTHERS mark, we also find for the same reasons that the Board did not err in concluding that Barclays had priority with respect to the standard character LEHMAN BROTHERS mark for purposes of filing its oppositions.

II

We next turn to Tiger Lily's challenge that the Board erred in finding a likelihood of confusion between the parties' marks.    Tiger Lily contends that the Board made a number of errors in analyzing and weighing the *DuPont* factors.    First, Tiger Lily argues that the Board failed to give proper weight to the lack of actual confusion.    Second, with respect to the similarity between the goods and services of the parties, Tiger Lily argues that the Board made an unsupported inference that consumers would assume Barclays expanded its product lines into new types of goods and services.    And third, Tiger Lily contends that the Board

improperly equated the distribution of promotional items with an expansion of product lines.

Barclays responds that the Board's *DuPont* factor analysis is supported by substantial evidence. Barclays notes that the LEHMAN BROTHERS mark is a famous mark that is entitled to broad protection. Barclays emphasizes that, far from avoiding confusion, Tiger Lily has actually attempted to capitalize on a likelihood of confusion by targeting its goods and services to consumers familiar with the LEHMAN BROTHERS mark. Moreover, Barclays argues that, regardless whether promotional items bearing the LEHMAN BROTHERS mark are evidence of expanding product lines, they demonstrate that the mark has, in fact, been used in connection with a broad range of goods, including several relating to alcohol and beverages, which makes it more likely that consumers will mistakenly confuse Tiger Lily's goods and services with those distributed by Lehman Brothers and Barclays. And Barclays contends that the issue of actual confusion is immaterial because Tiger Lily filed only intent to use applications and has provided no details regarding the scope of its commercial activity.

Under § 2(d) of the Lanham Act, a mark may be refused registration on the principal register if it is "likely, when used on or in connection with the goods of the applicant, to cause confusion" with another registered mark. 15 U.S.C. § 1052(d). Likelihood of confusion is a legal determination based on underlying findings of fact relating to the *DuPont* factors. *See In re Chatam Int'l, Inc.*, 380 F.3d 1340, 1342 (Fed. Cir. 2004) (citing *On-Line Careline*, 229 F.3d at 1084; *see also E.I. du Pont*, 476 F.2d at 1361. "Not all of the *DuPont* factors are necessarily 'relevant or of equal weight in a given case, and any one of the factors may control a particular case.'" *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d 1344, 1355 (Fed. Cir. 2011) (quoting *In re Majestic Distilling Co.*, 315 F.3d 1311, 1315 (Fed. Cir. 2003)). Only the *DuPont* factors "of significance to the

particular mark need be considered" in the likelihood of confusion analysis. *In re Mighty Leaf Tea*, 601 F.3d 1342, 1346 (Fed. Cir. 2010).

"We review the Board's factual findings on each relevant *DuPont* factor for substantial evidence, but we review the Board's weighing of the *DuPont* factors *de novo*." *Quik-Trip West, Inc. v. Weigel Stores, Inc.*, 984 F.3d 1031, 1034 (Fed. Cir. 2021). Under this standard of review, we agree with Barclays that the Board's analysis of the *DuPont* factors was supported by substantial evidence, and its overall conclusion regarding likelihood of confusion in view of those factors was correct.

Regarding the first *DuPont* factor—similarity of the marks—Tiger Lily does not dispute the Board's finding that the marks are identical. *See* Appellant Br. at 28–32. Thus, this factor weighs heavily in favor of a likelihood of confusion because identicality of the marks is likely to lead to the assumption that there is a common source for the parties' goods and services. *See Board Decision*, slip op. at 39 (citing *In re i.am.symbolic*, 66 F.3d 1315 (Fed. Cir. 2017); *In re Majestic Distilling Co., Inc.*, 315 F.3d 1311 (Fed. Cir. 2003); *In re Shell Oil Co.*, 992 F.2d 1204 (Fed. Cir. 1993); *In re Martin's Famous Pastry Shoppe, Inc.*, 748 F.2d 1565 (Fed. Cir. 1984)).

Turning to Tiger Lily's arguments concerning the similarity of the goods and services, Tiger Lily emphasizes abstract distinctions between whisky on the one hand and financial services on the other. For example, Tiger Lily asserts that the consuming public would not assume that the Lehman Brothers company began "selling whisky commercially or open[ed] up a bar or a restaurant," *see* Appellant Br. at 30. But that assertion, while likely true, is also irrelevant; the relevant inquiry considers "if the respective products are related in some manner and/or if the circumstances surrounding their marketing are such that they could give rise to the mistaken belief that they emanate

from the same source." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369 (Fed. Cir. 2012) (quoting *7-Eleven, Inc. v. Wechsler*, 83 U.S.P.Q.2d 1715, 1724 (T.T.A.B. 2007).[3] In short, Tiger Lily's arguments ignore the context-specific realities of the consumer markets in which the parties' goods and services are offered.

Barclays is correct that in modern consumer markets commercial trademarks are often licensed for use on products that may differ from the original source of the trademark. *See, e.g.*, *L.C. Licensing Inc. v. Berman*, 86 U.S.P.Q.2d 1883, 1889 (T.T.A.B. 2008) ("It is common knowledge, and a fact of which we can take judicial notice, that the licensing of commercial trademarks on 'collateral products' has become a part of everyday life."). In this regard, the Board relied on Barclays' extensive evidence showing examples of companies that have promoted financial services through use of their trademarks in connection

---

[3] As cited by the parties, the Board's case law has framed the relevant legal test in instances when the marks are identical as requiring a "viable relationship" between the goods and services. *See, e.g.*, *In re Thor Tech Inc.*, 90 U.S.P.Q.2d 1634, 1636 (T.T.A.B. 2009); *In re Opus One Inc.*, 60 U.S.P.Q.2d 1812, 1815 (T.T.A.B. 2001); *In re Concordia International Forwarding Corp.*, 222 U.S.P.Q. 355 (T.T.A.B. 1983). This court has never expressly endorsed the "viable relationship" test, but the Board's decisions generally cite this court's holding that "even when goods or services are not competitive or intrinsically related, the use of identical marks can lead to the assumption that there is a common source." *Shell Oil*, 992 F.2d at 1207. Recently, in *Micro Mobio Corp. v. General Motors, LLC*, No. 2021-1591, 2021 WL 4735312, at *3 (Fed. Cir. Oct. 12, 2021) (nonprecedential), we concluded that, regardless whether the term "viable relationship" is used, the legal test remains the same.

with alcohol, food, and beverages. *See, e.g.*, *Board Decision*, slip op. at 43–46 n.68. And the evidence demonstrates that, in marketing its own banking products and services, Lehman Brothers used its LEHMAN BROTHERS mark in connection with products that are related to whisky and alcoholic beverages. *See, e.g.*, J.A. 17664 (Lehman Brothers Whisky Decanter), J.A. 17696 (Lehman Brothers Beverage Cooler).

As a legal principle, because the LEHMAN BROTHERS mark has achieved a high degree of fame, it is afforded a broad scope of protection. *See Bose Corp. v. QSC Audio Prods., Inc.*, 293 F.3d 1367, 1371 (Fed. Cir. 2002); *see also Kenner Parker Toys Inc. v. Rose Art Indus. Inc.*, 963 F.2d 350, 353 (Fed. Cir. 1992) ("[A] mark with extensive public recognition and renown deserves and receives more legal protection than an obscure or weak mark."). Our precedent makes clear that a famous mark "casts a long shadow which competitors must avoid." *Kenner Parker Toys*, 963 F.2d at 353 (citing *Nina Ricci, S.A.R.L. v. E.T.F. Enters., Inc.*, 889 F.2d 1070, 1074 (Fed. Cir. 1989)). In this case, it may very well be true that Tiger Lily is not actively "confusing" consumers into believing that Lehman Brothers or Barclays is selling whisky. *See, e.g.*, Oral Arg. 9:12–9:20 (Tiger Lily arguing that there is no "deception" and that there are no "consumers that stand to be confused"). But the evidence shows that, by referencing the Lehman Brothers history in its marketing materials and by copying Lehman Brothers' logo, Tiger Lily is seeking to take advantage of the widespread consumer recognition of Barclays' LEHMAN BROTHERS mark. Tiger Lily attempts to draw a distinction between "consumer recognition" as compared with "goodwill," and argues that it is actually trying to trade on the "bad will" associated with the LEHMAN BROTHERS mark. *See* Oral Arg. at 9:54–9:59; 11:01–11:15. But we find no legal support for these subtle distinctions, and we thus find that Tiger Lily's attempts to

capitalize on the fame of the LEHMAN BROTHERS mark weighs in favor of finding a likelihood of confusion.

We also agree with Barclays that Tiger Lily is placing undue emphasis on a supposed lack of actual confusion. Tiger Lily's evidence on this point appears to consist of two vague unsupported paragraphs in a declaration from a single witness who generally asserted that the whisky has been selling since early 2016 in the United Kingdom and the United States without providing details to demonstrate the scope of the sales activity. *See* J.A. 25580. The mere fact that Tiger Lily's whisky customers have not affirmatively said that they are confused by "ask[ing] for a banking product or service" or "indicat[ing] that they felt deceived," *see id.*, does not prove that customers have not in fact been confused about whether the whisky is affiliated with Lehman Brothers; the "absence of evidence is not always evidence of absence." *See, e.g., Int'l Ass'n of Machinists & Aero. Workers, Local Lodge 964 v. BF Goodrich Aero. Aerostructures Grp.*, 387 F.3d 1046, 1055 (9th Cir. 2004).

In sum, the Board's findings with respect to the relevant *DuPont* factors were supported by substantial evidence in the record, and we need not consider additional *DuPont* factors that have no relevance to the marks at issue in this case. *See Mighty Leaf Tea*, 601 F.3d at 1346. Moreover, Tiger Lily's attempt to benefit from the fame of the LEHMAN BROTHERS mark "plays a 'dominant role in the process of balancing the *DuPont* factors.'" *See Bose*, 293 F.3d at 1371 (quoting *Recot, Inc. v. Becton*, 214 F.3d 1322, 1327 (Fed. Cir. 2000)). Thus, we agree with the Board's legal conclusion that, in view of the *DuPont* factors, there would be a likelihood of confusion.

## III

Next, we turn to Tiger Lily's argument that the Board erred in finding that Barclays had a bona fide intent to use its LEHMAN BROTHERS mark commercially. Relying on the same evidence that it did for abandonment, Tiger Lily

insists that Barclays' actions in publicly distancing itself from the LEHMAN BROTHERS mark over the course of a decade of nonuse demonstrate an intent not to use the mark. Under these circumstances, Tiger Lily contends, Barclays' capacity to use the LEHMAN BROTHERS mark is insufficient to demonstrate a bona fide intent to use it.

Barclays responds that its capacity to provide the financial services listed in its application, in combination with its longstanding and widespread offering of those services in connection with other marks it owns, is substantial evidence to support the Board's finding that it did not lack bona fide intent. Barclays also points to the same evidence that supported its argument that the mark was not abandoned, namely, its licensing of the mark and its continued use of the mark.

Under Lanham Act § 1(b), an applicant seeking to register a mark on an intent to use basis must have a bona fide intent to use the mark in commerce at the time of filing, measured by an objective standard. *See* 15 U.S.C. § 1051(b); *M.Z. Berger & Co. v. Swatch AG*, 787 F.3d 1368, 1377 (Fed. Cir. 2015). The Board considers whether an applicant had a bona fide intent to use the mark in commerce based on objective evidence of intent, "on a case-by-case basis considering the totality of the circumstances." *M.Z. Berger*, 787 F.3d at 1376; *see also Boston Red Sox Baseball Club LP v. Sherman*, 88 U.S.P.Q.2d 1581 (T.T.A.B. 2008); *Lane Ltd. v. Jackson Int'l Trading Co.*, 33 U.S.P.Q.2d 1351, 1355 (T.T.A.B. 1994). Bona fide intent is an issue of fact, which we review for substantial evidence. *M.Z. Berger*, 787 F.3d at 1376–77.

In this case, we agree with Barclays that substantial evidence supports the Board's finding regarding Barclays' bona fide intent. Under our case law, "the evidentiary bar is not high," and the circumstances must simply indicate "that the applicant's intent to use the mark was firm and not merely intent to reserve a right in the mark." *Id.* at

1376. The Board relied on Barclays' clearly demonstrated capability of using the LEHMAN BROTHERS mark, combined with "the existence of a successful ongoing concern such as Barclays has in the United States albeit under its other marks," as evidence that Barclays had a bona fide intent to use the mark. *Board Decision*, slip op. at 59–60. The Board pointed to the testimony of Barclays' witness, who testified regarding Barclays' longstanding engagement in the type of financial services identified in its application. *Id.* at 60 (citing testimony from Alexander Greenberg). And the Board also pointed to the licenses to Lehman Brothers and Bloomberg LP as further evidence of a "good faith intention to eventually use the mark in a commercial sense." *Id.*

Tiger Lily insists that Barclays has provided only a "mere statement of subjective intent," which under the Board's case law is insufficient to establish a bona fide intent. *See* Appellant Br. at 25 (citing *Lane*, 33 U.S.P.Q.2d at 1356). To support that position, Tiger Lily argues that Barclays' witness did not know details about a specific intent to use the mark in connection with a specific set of services. *See id.* at 26. But such evidence is not required to meet the evidentiary threshold, nor did the Board rely on Barclays' witness's testimony regarding any such specifics.

As noted above, the evidence demonstrates that Lehman Brothers and Barclays have continued to use the LEHMAN BROTHERS mark since 2008. And it is not disputed that Barclays currently offers, and has the capacity to continue to offer, the goods and services identified in its application for registration, nor is it disputed that those are precisely the types of goods and services with which the LEHMAN BROTHERS mark has been associated in the past. Under the totality of the circumstances in this case, the Board's finding that Tiger Lily failed to show a lack of bona fide intent by Barclays to use the LEHMAN BROTHERS mark commercially is supported by substantial evidence.

IV

Tiger Lily's final challenge is based on the Board's treatment of certain testimony provided by Barclays' witnesses. Specifically, Tiger Lily argues that the Board erred by failing to strike testimony from lawyer witnesses and that the Board afforded such testimony improper weight. Barclays responds that the Board did not abuse its discretion in considering and affording proper weight to any of the testimony.

We review the Board's evidentiary rulings for abuse of discretion, and we overturn them "only if they: (1) were clearly unreasonable, arbitrary, or fanciful; (2) were based on [] erroneous conclusion of law; (3) rest on clearly erroneous findings of fact; or (4) follow from a record that contains no evidence on which the Board could rationally base its decision." *Crash Dummy Movie, LLC v. Mattel, Inc.*, 601 F.3d 1387, 1390–91 (Fed. Cir. 2010) (citing *Chen*, 347 F.3d at 1307). Decisions about credibility of witnesses and weight of evidence are committed to the sound discretion of the Board as the trier of fact. *See Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 856 (1982) ("Determining the weight and credibility of the evidence is the special province of the trier of fact."); *see also Shoes by Firebug LLC v. Stride Rite Children's Grp., LLC*, 962 F.3d 1362, 1371 (Fed. Cir. 2020) ("[I]t is not for us to second-guess the [Patent Trial and Appeal] Board's assessment of the evidence." (quoting *Velander v. Garner*, 348 F.3d 1359, 1378 (Fed. Cir. 2003))); *Jandreau v. Nicholson*, 492 F.3d 1372, 1376 (Fed. Cir. 2007) ("[T]he Board [of Veterans' Appeals] retains discretion to make credibility determinations and otherwise weigh the evidence submitted, including lay evidence." (citing *Buchanan v. Nicholson*, 451 F.3d 1331, 1336–37 (Fed. Cir. 2006))).

Here, Tiger Lily objected to Barclays' submission of certain testimonial evidence, and the Board stated that it "carefully reviewed all of the testimony depositions" and

considered them in view of the objections. *Board Decision*, slip op. at 15–16. On appeal, Tiger Lily simply repeats the allegations that it made at the Board—namely, that the testimony was based on hearsay, speculation, and wishful thinking, and that privilege was improperly asserted. But Tiger Lily's vague assertions lead only to the conclusion that Tiger Lily disagrees with the Board's rulings on the evidentiary issues and the weighing of the evidence. Tiger Lily offers no basis to conclude that the Board abused its discretion.

V

Before concluding, we note that Barclays filed a cross-appeal purporting to challenge the Board's dismissal of its alternative grounds for opposing Tiger Lily's marks, namely, false suggestion of connection, dilution, and lack of bona fide intent. Tiger Lily argues that, because Barclays ultimately prevailed in its oppositions at the Board, Barclays' cross-appeal is improper under Federal Circuit Rule 28.1 and this court's decision in *Bailey v. Dart Container Corp. of Mich.*, 292 F.3d 1360 (Fed. Cir. 2002). We agree with Tiger Lily.

Barclays responds that its cross-appeal is proper under our precedent in *Real Foods Pty Ltd. v. Frito-Lay N. Am., Inc.*, 906 F.3d 965, 980 (Fed. Cir. 2018). In that case, Frito-Lay had opposed registration of Real Foods' applied-for marks on two separate grounds. First, Frito-Lay challenged that the marks were merely descriptive and had not acquired distinctiveness, which the Board sustained. *Id.* at 971. And second, Frito-Lay challenged that the marks were generic, which the Board dismissed. *Id.* Real Foods appealed from the Board's decision on lack of distinctiveness, and Frito-Lay cross-appealed on the issue of genericness. *Id.* This court specifically considered whether Frito-Lay's cross-appeal was proper, finding that:

> Frito-Lay has standing to challenge the [Board]'s finding of non-genericness because Frito-Lay is

> adversely affected by registrability on the supplemental register of a descriptive term that has not acquired secondary meaning and therefore may eventually become eligible for registration on the principal register, while a generic term cannot.

*Id.* at 980 n.8. Thus, the court found that because the dismissed genericness claim would have resulted in a broader preclusion than the sustained lack of distinctiveness claim, Frito-Lay's cross-appeal on the genericness issue sought to expand its rights and was proper.

The instant case is distinguishable from *Frito-Lay*. Here, Barclays presented four distinct grounds for opposing Tiger Lily's marks, but each ground asks for the same result—that the Board refuse registration of Tiger Lily's marks. Said differently, if Barclays prevails on any of its other three grounds, the result will be exactly the same as it currently stands. Accordingly, because under Federal Circuit Rule 28.1 Barclays cannot appeal from a judgment in which it prevailed, Barclays' cross-appeal on the issues of false suggestion, dilution, and lack of bona fide intent is improper.

Notwithstanding the impropriety of Barclays' cross-appeal, we may consider Barclays' arguments as alternative grounds for affirmance. *See Droplets, Inc. v. E*TRADE Bank*, 887 F.3d 1309, 1322 (Fed. Cir. 2018). However, because we affirm the Board's decision with respect to likelihood of confusion, we need not reach any alternative grounds for affirmance.

## Conclusion

We have considered Tiger Lily's remaining arguments but we find them unpersuasive. Accordingly, for the reasons set forth, we affirm the Board's decision with respect to all aspects of Tiger Lily's appeal, and we dismiss Barclays' cross-appeal.

**AFFIRMED-IN-PART, DISMISSED-IN-PART**

## COSTS

No costs.