# United States Court of Appeals
# for the Federal Circuit

_____

**NATERRA INTERNATIONAL, INC.,**
*Appellant*

**v.**

**SAMAH BENSALEM,**
*Appellee*

_____

2022-1872

_____

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 92074494.

_____

Decided: February 15, 2024

_____

JORGE MIGUEL HERNANDEZ, Carstens, Allen, & Gourley, LLP, Plano, TX, argued for appellant. Also represented by DAVID W. CARSTENS.

JEFFREY STURMAN, Sturman Law LLC, Denver, CO, argued for appellee.

_____

Before MOORE, *Chief Judge*, STOLL and CUNNINGHAM, *Circuit Judges.*

CUNNINGHAM, *Circuit Judge.*

Naterra International, Inc. ("Naterra") appeals from a decision of the Trademark Trial and Appeal Board ("Board") denying Naterra's petition for cancellation of Samah Bensalem's BABIES' MAGIC TEA standard character mark registration. *Naterra Int'l, Inc. v. Samah Bensalem*, No. 92074494, 2022 WL 1237887, at *1, *21 (T.T.A.B. Apr. 4, 2022) ("*Decision*"). Naterra challenges the Board's conclusion that there was no likelihood of confusion between Naterra's BABY MAGIC mark and Bensalem's BABIES' MAGIC TEA mark. For the reasons below, we vacate the Board's denial of Naterra's cancellation petition and remand for further proceedings.

## I. BACKGROUND

Bensalem owns the registration for the standard character mark BABIES' MAGIC TEA for "medicated tea for babies that treats colic and gas and helps babies sleep better." *Decision* at *1; J.A. 48 (Trademark Reg. No. 4,771,300). Naterra owns four registrations for the standard character mark BABY MAGIC covering numerous toiletry goods.[1] *See Decision* at *1. In June 2020, Naterra filed a Petition for Cancellation alleging that the use of Bensalem's BABIES' MAGIC TEA mark in connection with Bensalem's goods would likely "cause confusion, mistake,

---

[1] *See* J.A. 50 (Trademark Reg. No. 1,228,079) (body powder, body oil, and skin cleanser); J.A. 51 (Trademark Reg. No. 1,055,375) (hair shampoo); J.A. 52–54 (Trademark Reg. No. 580,657) (skin lotion); J.A. 55 (Trademark Reg. No. 3,890,083) (baby hair conditioner; baby lotion; baby oil; baby powder; baby shampoo; baby wipes; bath soaps in liquid, solid, or gel form; bubble bath; cologne; laundry detergent; non-medicated bath preparations; non-medicated diaper rash cream; non-medicated diaper rash ointments and lotions; skin cleansers; skin conditioners; and sunscreen); *see also Decision* at *4 (finding Naterra's "pleaded registrations are valid and owned by [Naterra]").

or deception," and is therefore in violation of Section 2(d) of the Lanham Act.  J.A. 65 ¶ 31; *see also Decision* at *1;  J.A. 56–58, 63–65.

The Board denied Naterra's petition because Naterra failed to prove a likelihood of confusion.  *Decision* at *21. The Board conducted its likelihood of confusion analysis under the factors set forth in *In re E.I. DuPont DeNemours & Co.*, 476 F.2d 1357, 1361 (CCPA 1973) ("the *DuPont* factors").[2]  *Decision* at *6.  First, the Board found Naterra "fail[ed] to carry [its] burden to clearly show [ ]that its BABY MAGIC mark is commercially strong, let alone famous" and the mark therefore "f[ell] somewhere in the middle of the fame spectrum" for *DuPont* factor five.  *Id.* at *12; *see also id.* at *7–11.  The Board found *DuPont* factor six to be neutral, and thus concluded that the BABY MAGIC mark is entitled to "the normal scope of protection to which inherently distinctive marks are entitled."  *Id.* at *12 (internal quotation marks omitted).  The Board also concluded that *DuPont* factor one favored finding likelihood of confusion because the marks were "more similar than

---

[2]  "The thirteen factors are as follows:  (1) similarity of the marks; (2) similarity and nature of goods described in the marks' registrations; (3) similarity of established trade channels; (4) conditions of purchasing; (5) fame of the prior mark; (6) number and nature of similar marks in use on similar goods; (7) nature and extent of actual confusion; (8) length of time and conditions of concurrent use without evidence of actual confusion; (9) variety of goods on which mark is used; (10) market interface between applicant and owner of a prior mark; (11) extent to which applicant has a right to exclude others from use of its mark; (12) extent of potential confusion; and (13) any other established probative fact on effect of use."  *Zheng Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 1371 n.2 (Fed. Cir. 2018) (citing *DuPont,* 476 F.2d at 1361).

dissimilar as to appearance, sound, connotation and commercial impression." *Id.* at \*15; *see also id.* at \*12–14.  The Board also found that *DuPont* factors two (similarity and nature of goods) and three (similarity of established trade channels) weighed against a finding of likelihood of confusion, concluding that Naterra had "failed to demonstrate that the parties' respective goods are related in any manner, or that they travel within the same trade channels to the same class of purchasers." *Id.* at \*19; *see also id.* at \*15–18.  Lastly, the Board found that *DuPont* factors four, eight, ten, and twelve were neutral.  *Id.* at \*19–20.

In weighing the relevant *DuPont* factors, the Board gave "particular weight" to the lack of "probative evidence showing the relatedness of the parties' respective goods, . . . coupled with the somewhat weak inherent nature of [Naterra's] BABY MAGIC mark, [and] the lack of demonstrated commercial strength (let alone fame) and similar trade channels." *Id.* at \*21.  After weighing the pertinent *DuPont* factors, the Board found Naterra failed to prove a likelihood of confusion.  *See id.*

Naterra appeals.  We have jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

## II.  Standard of Review

Section 2(d) of the Lanham Act provides the registration of a mark may be refused if it is "likely, when used on or in connection with the goods of the applicant, to cause confusion" with another registered mark.  15 U.S.C. § 1052(d); *see QuikTrip W., Inc. v. Weigel Stores, Inc.*, 984 F.3d 1031, 1034 (Fed. Cir. 2021).  "Likelihood of confusion is a question of law based on underlying factual findings regarding the *DuPont* factors." *Spireon, Inc. v. Flex Ltd.*, 71 F.4th 1355, 1362 (Fed. Cir. 2023) (citing *In re i.am.symbolic, llc*, 866 F.3d 1315, 1322 (Fed. Cir. 2017)).  "We review the Board's factual findings on each relevant *DuPont* factor for substantial evidence, but we review the Board's weighing of the *DuPont* factors de novo." *QuikTrip*, 984 F.3d at

1034. "Substantial evidence is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Zheng Cai*, 901 F.3d at 1371 (internal quotation marks omitted). "Not all of the *DuPont* factors are necessarily relevant or of equal weight in a given case, and any one of the factors may control a particular case." *Tiger Lily Ventures Ltd. v. Barclays Cap. Inc.*, 35 F.4th 1352, 1362 (Fed. Cir. 2022) (internal quotation marks omitted). "Only the *DuPont* factors of significance to the particular mark need be considered in the likelihood of confusion analysis." *Id.* (internal quotation marks omitted).

## III. DISCUSSION

Naterra raises two issues on appeal. First, Naterra contends that substantial evidence does not support the Board's finding that the similarity and nature of the goods (*DuPont* factor two) and trade channels (*DuPont* factor three) disfavor a likelihood of confusion. Appellant's Br. 13, 17; *see also id.* at 14–16, 18. Second, Naterra argues that the Board erred by failing to give greater weight to the similarity of the marks (*DuPont* factor one) and the fame of the BABY MAGIC mark (*DuPont* factor five) in its overall likelihood of confusion analysis. *Id.* at 10–13. We address each issue in turn.

### A.

We first turn to Naterra's arguments regarding *DuPont* factors two and three. *See id.* at 13, 17.

### i.

The second *DuPont* factor "considers whether the consuming public may perceive the respective goods and services of the parties as related enough to cause confusion about the source or origin of the goods and services." *In re St. Helena Hosp.*, 774 F.3d 747, 752 (Fed. Cir. 2014) (cleaned up) (citation omitted). Naterra argues that the Board failed to consider pertinent evidence indicating that several companies sell baby ingestible products and baby

skin care products under the same mark in concluding that the parties' goods were not related. Appellant's Br. 13–15.

In reaching the conclusion that the goods are not related, the Board rejected Naterra's theory of relatedness known as "umbrella branding" and "natural zones of expansion." *Decision* at \*16–18. In the context of discussing the issue of natural expansion, the Board stated that Naterra's expert "provided several examples of other umbrella baby brand companies that purportedly provide certain products in both the baby skincare product category and the baby ingestible product category." *Id.* at \*17 (cleaned up). The Board rejected this expert testimony as "unsupported by underlying evidence." *Id.*

However, testimony that third-party companies sell both types of goods is pertinent to the relatedness of the goods. *See Recot, Inc. v. Becton*, 214 F.3d 1322, 1328–29 (Fed. Cir. 2000) (finding the Board erred in declining to consider lay evidence that several companies sell both pet and human food products). Furthermore, Bensalem's counsel admitted at oral argument that the third-party evidence is "absolutely very relevant." Oral Arg. at 15:55–16:16, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=22-1872_06062023.mp3. We cannot discern if the Board also considered and rejected this testimony outside its discussion of the issue of natural expansion. *See, e.g., Packard Press, Inc. v. Hewlett-Packard Co.*, 227 F.3d 1352, 1358 (Fed. Cir. 2000) (vacating and remanding because the court could not "discern from the Board's brief discussion" whether the Board applied the wrong test); *Decision* at \*18 (noting an "absence of evidence showing that other companies in [Naterra's] industry also sell medicated teas"); J.A. 134 ¶¶ 13–17. Because we cannot discern whether the relevant evidence was properly evaluated, we remand to the Board for further consideration and explanation of its analysis under this factor.

At oral argument, Bensalem's counsel also argued that the Board's conclusion on this factor at most constitutes harmless error. *See* Oral Arg. at 10:12–50. This argument was raised for the first time at oral argument and is thus forfeited. *See SEKRI, Inc. v. United States*, 34 F.4th 1063, 1071 n.9 (Fed. Cir. 2022). Additionally, even if we were to consider the merits of Bensalem's argument, we find the argument unpersuasive. The Board relied on the rejection of the third-party evidence in finding no relatedness. *See Decision* at *16, *18. Among other things, the Board further found the fact that "this case is devoid of probative evidence showing the relatedness of the parties' respective goods" "carrie[d] particular weight" in arriving at the conclusion that Naterra failed to prove a likelihood of confusion. *Id.* at *21. Because the Board might reach "an answer to the overall likelihood-of-confusion question different from the answer the Board gave in the decision on review," the error is not harmless. *See Juice Generation Inc. v. GS Enters. LLC*, 794 F.3d 1334, 1341 (Fed. Cir. 2015).

ii.

The third *DuPont* factor considers "[t]he similarity or dissimilarity of established, likely-to-continue trade channels." *In re Detroit Athletic Co.*, 903 F.3d 1297, 1308 (Fed. Cir. 2018) (quoting *DuPont*, 476 F.2d at 1361). Naterra argues that the Board's finding on the third factor is not supported by substantial evidence because it ignored Bensalem's admission that the parties' goods are sold in similar trade channels. Appellant's Br. 17–18; J.A. 109 ¶ 7. We agree.

The Board addressed some but not all of the evidence relevant to the third *DuPont* factor. For example, the Board found there to be "no dispute that the classes of customers for both parties' areas of business are the same or overlapping (i.e., parents and caregivers)." *Decision* at *18. The Board also considered evidence that the parties' goods

were offered together online by Walmart and Amazon, J.A. 119–21 ¶¶ 15–16, but ultimately found the third factor to weigh against a finding of likelihood of confusion, indicating that "[w]ithout more persuasive evidence, we cannot conclude that the trade channels are the same in this case." *Decision* at \*18–19.

However, the Board failed to address Bensalem's response to the request for admission, admitting that both parties "utilize similar channels of trade in connection with the trademarks." J.A. 109 ¶ 7.  This request for admission is relevant to the inquiry under the third factor.  Moreover, the Board did not identify in its decision any evidence showing a lack of similarity in trade channels. *Decision* at \*18–19; Appellee's Br. 30–31; Oral Arg. at 12:27–53.  Accordingly, a reasonable mind could not accept the available evidence as adequate to support the Board's finding that the third *DuPont* factor weighs against a finding of likelihood of confusion. *See Zheng Cai*, 901 F.3d at 1371.

For the first time at oral argument, Bensalem's counsel similarly contends that the Board's finding with respect to the third *DuPont* factor is at most harmless error. *See* Oral Arg. at 12:56–13:33.  We again find this argument forfeited.  Even if we consider this argument on the merits, it fails.  The Board relied on the lack of similar trade channels in finding Naterra failed to prove a likelihood of confusion. *Decision* at \*21.  Because the Board might reach "an answer to the overall likelihood-of-confusion question different from the answer the Board gave" if it considered the admission regarding the trade channels, the error is not harmless. *See Juice Generation*, 794 F.3d at 1341.

Accordingly, we vacate the Board's decision and remand for further proceedings.  On remand, the Board should consider all the relevant evidence related to the second and third *DuPont* factors.

B.

Naterra additionally argues that the Board incorrectly weighed *DuPont* factors one and five in its likelihood of confusion analysis. *See* Appellant's Br. 10–13. We address each factor in turn.

i.

Regarding the first *DuPont* factor, Naterra does not dispute the Board's finding that the BABY MAGIC and BABIES' MAGIC TEA marks were "more similar than dissimilar as to appearance, sound, connotation and commercial impression." *Decision* at *15; *see* Oral Arg. at 5:43–51 (Naterra conceding to "hav[ing] no issue with the Board's factfinding"). Rather, Naterra contends that the Board erred in its weighing of this factor, arguing that it "should—at a minimum—weigh heavily in favor of finding a likelihood of confusion if not be dispositive in the analysis." Appellant's Br. 12; *see also id.* at 10–11. We find Naterra's argument to be persuasive.

The Board erred in failing to weigh the first *DuPont* factor heavily in favor of a likelihood of confusion finding. *Decision* at *21. This court's holding in *Detroit Athletic* is instructive, where we found that similarity of the marks "weighs heavily in the confusion analysis" because the Board found that the marks' "lead words are their dominant portion and are likely to make the greatest impression on consumers." 903 F.3d at 1303–04. While the words "Co." and "Club" technically differentiated the marks, the court found those words were merely descriptive and "unlikely to change the overall commercial impression engendered by the marks." *Id.* at 1304. Similarly, here, the Board found that "the first two words of [the] BABIES' MAGIC mark and the entirety of [the] BABY MAGIC mark look and sound almost the same and have the same connotation and commercial impression." *Decision* at *13. Moreover, just like in *Detroit Athletic*, the Board here found that TEA is "a generic term" having "no source-identifying

significance" and "is the ultimate in descriptiveness." *Id.* at *14 (citation omitted). Accordingly, the first *DuPont* factor should "weigh[] heavily in the confusion analysis." *Detroit Athletic*, 903 F.3d at 1303–04. The Board here erred in concluding otherwise.

We decline to address Naterra's additional argument that this first factor is dispositive. Because we also vacate the Board's decision in light of the errors with respect to the analysis of the second and third *DuPont* factors, we remand to the Board to address this argument after considering all the relevant *DuPont* factors. *See Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1265 (Fed. Cir. 2002) (explaining the likelihood of confusion analysis "considers all *DuPont* factors for which there is evidence of record" but may focus on dispositive factors); *In re Guild Mortgage Co.*, 912 F.3d 1376, 1381 (Fed. Cir. 2019) (vacating the Board's decision and remanding for the Board to reconsider one of the *DuPont* factors and "to reconsider its likelihood of confusion determination in the first instance in light of all the evidence").

ii.

Lastly, we address Naterra's argument relating to the fifth *DuPont* factor, fame. *See* Appellant's Br. 12–13. On this factor, the Board found there to be no evidence regarding "sales or advertising expenditures in connection with [Naterra's] trademark;" no evidence regarding "critical assessments or notice by independent sources of the products identified by the mark;" and no evidence regarding "general reputation of [Naterra's] BABY MAGIC mark." *Decision* at *10. The Board also rejected Naterra's Executive President's testimony as self-serving and "unsupported by any corroborating evidence." *Id.* at *10–11. Lastly, the Board found Naterra's foreign registrations "d[id] not aid [the] determination" on fame in the United States. *Id.* at *12. Therefore, the Board did not find the BABY MAGIC mark "commercially strong, *let alone famous*," and instead

found the mark "somewhat conceptually weak" and that it "falls somewhere in the middle of the fame spectrum." *Id.* at *9, *12 (emphasis added).

On appeal, Naterra does not challenge the Board's factfinding on this factor. *See* Oral Arg. at 5:43–51. Instead, Naterra argues that the Board erred as a matter of law in failing to give greater weight to fame in its likelihood of confusion analysis. Appellant's Br. 12–13. We disagree. Naterra relies on *Recot* to argue that when present, fame "plays a dominant role" in the likelihood of confusion analysis. *See id.* But *Recot* is inapposite because in that case the mark's fame was "unquestionably established." 214 F.3d at 1327. Here, fame was not unquestionably established. *See Decision* at *12. Therefore, the Board did not err in failing to give fame a dominant role in the overall likelihood of confusion analysis. *Recot*, 214 F.3d at 1327.

## IV. CONCLUSION

We have considered Naterra's remaining arguments and find them unpersuasive. We conclude the Board erred in weighing the first *DuPont* factor and failed to address relevant evidence concerning the third *DuPont* factor. We also cannot discern whether the Board properly addressed relevant evidence concerning the second *DuPont* factor. Accordingly, we vacate the Board's decision and remand for further proceedings consistent with this opinion.

## VACATED AND REMANDED

### COSTS

Costs awarded to appellant.