# United States Court of Appeals for the Federal Circuit

---

**QUIKTRIP WEST, INC.,**
*Appellant*

**v.**

**WEIGEL STORES, INC.,**
*Appellee*

---

2020-1304

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 91235273.

---

Decided: January 7, 2021

---

WESLEY EDENTON WEEKS, Wiley Rein, LLP, Washington, DC, for appellant. Also represented by RACHEL BLUE, JESSICA JOHN BOWMAN, McAfee & Taft, Tulsa, OK.

ROBERT E. PITTS, Pitts & Lake, P.C., Knoxville, TN, for appellee. Also represented by PAUL A. FORSYTH, JACOB G. HORTON.

---

Before LOURIE, O'MALLEY, and REYNA, *Circuit Judges.*

LOURIE, *Circuit Judge.*

QuikTrip West, Inc. ("QuikTrip") appeals from a judgment of the U.S. Patent and Trademark Office Trademark Trial and Appeal Board ("the Board") dismissing its opposition to Weigel Stores, Inc.'s ("Weigel") registration of the design mark W WEIGEL'S KITCHEN NOW OPEN. *QuikTrip West, Inc. v. Weigel Stores, Inc.*, No. 91235273 (T.T.A.B. Oct. 24, 2019); J.A. 1–22. The Board dismissed QuikTrip's opposition on the ground that there was no likelihood that consumers would confuse Weigel's W WEIGEL'S KITCHEN NOW OPEN mark with QuikTrip's registered design mark QT KITCHENS. For the reasons set forth below, we affirm.

## BACKGROUND

QuikTrip and Weigel both operate combination gasoline and convenience stores. QuikTrip has sold food and beverages in its stores under the registered mark QT KITCHENS since 2011. J.A. 31; Appellant Br. at 1. The QT KITCHENS mark is pictured below.



J.A. 30 (U.S. Registration 4,118,738).

In 2014, Weigel began using the stylized mark W KITCHENS in connection with food and beverages sold in its stores. J.A. 214, 221. Subsequently, QuikTrip sent Weigel a cease-and-desist letter, requesting that Weigel stop using the W KITCHENS mark on the basis that it was confusingly similar to QuikTrip's QT KITCHENS mark. *Id.* at 74. In response to QuikTrip's concerns, Weigel modified its mark by changing the plural "KITCHENS" to the singular "KITCHEN," altering the font, and adding the

words "WEIGEL'S" and "NOW OPEN." *Id.* at 106–108, 120, 963–964, 1142. Weigel's initial and modified marks are pictured below. Despite Weigel's modifications, Quik-Trip objected to Weigel's continued use of the word "KITCHEN" in its mark. *Id.* at 1142.

| First Iteration | |
|---|---|
| Second Iteration | |
| Final Design (Challenged Mark) | |

Appellant Br. at 12.

In 2017, Weigel applied to register the final iteration of its mark, W WEIGEL'S KITCHEN NOW OPEN. J.A. 1153 (Application 87/324,199). QuikTrip filed an opposition to Weigel's mark under 15 U.S.C. § 1052(d), asserting that it would create a likelihood of confusion with its QT KITCHENS mark.

The Board evaluated the likelihood of confusion between the two marks by referencing the factors set forth in *In re E. I. DuPont de Nemours & Co.*, 476 F.2d 1357, 1361 (C.C.P.A. 1973) ("the *DuPont* factors"). It first found that the parties' identical-in-part goods and related services, overlapping trade channels, overlapping classes of customers, and similar conditions of purchase pointed to a likelihood of confusion finding. J.A. 5–9, 20–21. However, the Board found that the dissimilarity of the marks weighed against a likelihood of confusion. *Id.* at 18. In conducting its similarity analysis, the Board acknowledged that both

marks include the word "KITCHEN(S)[1]" but determined that customers would not focus on that word for source indication because it is "at least highly suggestive, if not descriptive." *Id.* at 13–15.  The Board further found that Weigel did not act in bad faith in adopting the mark W WEIGEL'S KITCHEN NOW OPEN.  *Id.* at 18–20.  Lastly, the Board found the following *DuPont* factors to be neutral: the extent of actual confusion, the extent of potential confusion, the length of time during and conditions under which there was concurrent use without evidence of actual confusion, and the variety of goods on which a mark is or is not used.  *Id.* at 21–22.

The Board concluded that although several factors weighed in favor of a likelihood of confusion, Weigel's mark was "so dissimilar to [QuikTrip's] pleaded mark" that there would not be a likelihood of confusion.  *Id.* at 22.  The Board subsequently dismissed QuikTrip's opposition to Weigel's registration of its mark.  QuikTrip appealed to this court.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(B).

## DISCUSSION

Under § 2(d) of the Lanham Act, a mark may be refused registration on the principal register if it is "likely, when used on or in connection with the goods of the applicant, to cause confusion" with another registered mark.  15 U.S.C. § 1052(d).  Likelihood of confusion is a legal determination based on underlying findings of fact relating to the factors set forth in *DuPont*.  *DuPont*, 476 F.2d at 1361.  We review the Board's factual findings on each relevant *DuPont* factor for substantial evidence, but we review the Board's

---

[1]  QuikTrip's mark includes the plural word "KITCHENS", whereas Weigel's mark includes the singular word "KITCHEN."  Like the Board, we refer to the overlapping portions of the marks collectively as "KITCHEN(S)."

weighing of the *DuPont* factors de novo.  *Swagway, LLC v. Int'l Trade Comm'n*, 934 F.3d 1332, 1338 (Fed. Cir. 2019). A finding is supported by substantial evidence if a reasonable mind might accept the evidence as adequate to support the conclusion.  *On-Line Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1085 (Fed. Cir. 2000) (quoting *In re Gartside*, 203 F.3d 1305, 1312 (Fed. Cir. 2000)).

On appeal, QuikTrip challenges the Board's analysis regarding *DuPont* factor one, the similarity of the marks, and *DuPont* factor thirteen, Weigel's alleged bad faith. QuikTrip further challenges the Board's overall weighing of the *Dupont* factors.  We address each argument in turn.

## I. *Similarity of the Marks*

We first turn to QuikTrip's arguments regarding *DuPont* factor one.  *DuPont* factor one concerns the "similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression." *DuPont*, 476 F.2d at 1361.  QuikTrip asserts that the Board improperly dissected the marks when analyzing their similarity.  Specifically, it contends that the Board ignored the substantial similarity created by the marks' shared word KITCHEN(S) and gave undue weight to other dissimilar portions of the marks.  Weigel responds that the Board correctly compared the marks as a whole.  According to Weigel, the Board did not disregard the shared word KITCHEN(S).  Rather, it simply found that other, more distinct portions of the marks, including Weigel's encircled W and QuikTrip's QT in a square, eliminate any likelihood of confusion.

We agree with Weigel that the Board correctly analyzed the marks as a whole.  It is not improper for the Board to determine that, "for rational reasons," it should give "more or less weight . . . to a particular feature of the mark" provided that its ultimate conclusion regarding the likelihood of confusion "rests on [a] consideration of the marks in their entireties." *Packard Press, Inc. v. Hewlett-*

*Packard Co.*, 227 F.3d 1352, 1357 (Fed. Cir. 2000) (citing *In re Nat'l Data Corp.*, 753 F.2d 1056, 1058 (Fed. Cir. 1985)).

Here, the Board properly found that, when evaluating the similarity of the marks, it should accord less weight to the shared term KITCHEN(S) because "kitchen" is a "highly suggestive, if not descriptive" word. J.A. 13. *See In re Nat'l Data Corp.*, 753 F.2d at 1058–59 ("That a particular feature is descriptive or generic with respect to the involved goods or services is one commonly accepted rationale for giving less weight to a portion of a mark . . . ."). QuikTrip asserts that the word "kitchen" is not descriptive because "[t]he parties do not sell kitchens—they sell food and food-related services." Appellant Br. at 29. But Quik-Trip's argument fails to address the Board's extensive recitation of evidence demonstrating that kitchen is a descriptive term, including dictionary entries defining a kitchen as a room where food is prepared, and numerous articles, third-party uses, and third-party registrations of marks incorporating the word "kitchen" for sale of food and food-related services. J.A. 9–14; *see also Juice Generation, Inc. v. GS Enters. LLC*, 794 F.3d 1334, 1338 (Fed. Cir. 2015) ("[E]vidence of third-party use bears on the strength or weakness of an opposer's mark.") (citing *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1373 (Fed. Cir. 2005))). Moreover, the Board was also entitled to afford more weight to the dominant, distinct portions of the marks—Weigel's encircled W next to the surname Weigel's and QuikTrip's QT in a square below a chef's hat—given their prominent placement, unique design, and color. J.A. 15–16; *see also In re Electrolyte Labs., Inc.*, 929 F.2d 645, 647 (Fed. Cir. 1990) ("More dominant features will, of course, weigh heavier in the overall impression of a mark.").

Although the Board weighed certain portions of the marks more heavily, it still compared the marks in their entireties. The Board specifically observed that the marks

contain different letters and geometric shapes, and that "[e]ven the common word KITCHEN(S) appears in a very different font in each mark." J.A. 16–17. The Board also noted that, unlike Weigel's mark, QuikTrip's mark includes a chef's hat tilted to one side. *Id.* at. 16. Phonetically, the Board found that "W WEIGEL'S KITCHEN NOW OPEN" does not sound similar to "QT KITCHENS" because the "letters do not rhyme or otherwise sound close to one another, and the component WEIGEL'S adds an entirely different sound." *Id.* at 17. With respect to the marks' commercial impressions and connotations, the Board determined that Weigel's mark connotes a kitchen belonging to a person named Weigel and QuikTrip's mark, in contrast, connotes a string of kitchens with chefs, run by QT. *Id.* at 17–18. Accordingly, the Board's factual finding that the marks, in their entireties, differ in appearance, sound, connotation, and commercial impression is supported by substantial evidence.

## II. *Bad Faith*

We next turn to QuikTrip's argument that Weigel acted in bad faith. A party's bad faith in adopting a mark is relevant to the thirteenth *DuPont* factor, which includes "any other established fact probative of the effect of use." *DuPont*, 476 F.2d at 1361; *see also Estrada v. Telefonos De Mex., S.A.B. de C.V.*, 447 F. App'x 197, 204 (Fed. Cir. 2011) (nonprecedential) ("An applicant's bad faith is potentially relevant in the likelihood-of-confusion analysis."). "[A]n inference of 'bad faith' requires something more than mere knowledge of a prior similar mark." *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1565 (Fed. Cir. 1987). It requires an intent to confuse. *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 117 (2d Cir. 2009) ("[T]he 'only relevant intent is intent to confuse. There is a considerable difference between an intent to copy and an intent to deceive.'" (quoting 4 J. Thomas McCarthy,

MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23.113)); *see also* J.A. 19.

QuikTrip first argues that the Board failed to meaningfully weigh evidence that Weigel intentionally copied elements of QuikTrip's mark in order to confuse customers. QuikTrip's evidence includes, *inter alia*, Weigel's alleged surreptitious photographing of QuikTrip's stores and its examination of QuikTrip's marketing materials. QuikTrip next faults the Board for not explicitly discussing its argument that Weigel's alleged appropriation of QuikTrip's trade dress evidenced bad faith and would have contributed to a likelihood of confusion because, according to QuikTrip, the parties' marks are rendered even more confusingly similar when presented in comparable trade dress contexts. Weigel responds that its willingness to alter its mark several times in order to prevent customer confusion negates any inference of bad faith. It also asserts that the Board was not required to discuss every argument that QuikTrip put forward.

We agree with Weigel. In order to accommodate QuikTrip's concerns regarding customer confusion, Weigel substantially modified its mark not once, but twice. That evidence does not demonstrate that Weigel intended to copy QuikTrip's mark in order to confuse customers. The Board properly found that Weigel's willingness to take steps to alter its mark evidenced its lack of bad faith. J.A. 19. We are also unpersuaded by QuikTrip's assertion that the Board erred by not discussing QuikTrip's trade dress argument. We have held "on multiple occasions that failure to explicitly discuss every issue or every piece of evidence does not alone establish that the tribunal did not consider it." *Novartis AG v. Torrent Pharms. Ltd.*, 853 F.3d 1316, 1328 (Fed. Cir. 2017). Although the Board did not expressly reference Weigel's trade dress in its bad faith or similarity analysis, it was not obliged to discuss every piece of evidence that QuikTrip raised. Thus, with respect to

*DuPont* factor thirteen, substantial evidence supports the Board's finding that Weigel did not act in bad faith.

### III. *Weighing of the DuPont Factors*

We finally turn to the Board's weighing of the *DuPont* factors. QuikTrip contends that the Board legally erred in giving decisive weight to the dissimilarity of the marks under *DuPont* factor one, while disregarding other *DuPont* factors strongly supporting a likelihood of confusion. Those factors include the overlap in the parties' goods, services, channels of trade, classes of consumers, and conditions of sale.

We are unpersuaded by QuikTrip's argument that the Board gave undue weight to the dissimilarity of the marks. Analysis of the *DuPont* factors constitutes a balancing test. *DuPont*, 476 F.2d at 1361. One *DuPont* factor "may be dispositive in a likelihood of confusion analysis, especially when that single factor is the dissimilarity of the marks." *Champagne Louis Roederer, S.A. v. Delicato Vineyards*, 148 F.3d 1373, 1375 (Fed. Cir. 1998). Contrary to QuikTrip's assertion, the Board did not disregard evidence supporting a likelihood of confusion. It simply found that such evidence was outweighed by the differences between the marks. We see no error in the Board's determination that the dissimilarity of the marks was dispositive in its likelihood-of-confusion analysis, especially given the Board's findings that the marks noticeably differed in appearance, sound, connotation, and commercial impression.

### CONCLUSION

We have considered QuikTrip's remaining arguments and find them unpersuasive. For the foregoing reasons, the decision of the Board is affirmed.

### **AFFIRMED**