NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**FOCUSVISION WORLDWIDE, INC.,**
*Appellant*

**v.**

**INFORMATION BUILDERS, INC.,**
*Appellee*

---

2020-2054

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 91237349.

---

Decided: June 14, 2021

---

JOHN TEHRANIAN, One LLP, Newport Beach, CA, for appellant. Also represented by JENNY KIM, Thrill One Sports & Entertainment, Costa Mesa, CA.

IRA E. SILFIN, Mandelbaum Silfin Economou LLP, White Plains, NY, for appellee. Also represented by HOWARD F. MANDELBAUM.

---

Before NEWMAN, O'MALLEY, and TARANTO, *Circuit Judges*.

TARANTO, *Circuit Judge*.

FocusVision Worldwide, Inc. applied to the Patent and Trademark Office to register the mark FOCUSVISION (in standard characters). Information Builders, Inc. (IBI) opposed the application on the ground that FocusVision's mark is likely to cause confusion with IBI's two registered FOCUS marks. Noting that FocusVision had not sought to cancel IBI's registrations, the Trademark Trial and Appeal Board sustained IBI's opposition to FocusVision's mark and refused to register it. *Info. Builders, Inc. v. FocusVision Worldwide, Inc.*, No. 91237349, 2020 WL 3027606 (T.T.A.B. Apr. 30, 2020) (*TTAB Opinion*). We affirm.

I

FocusVision provides services to businesses that wish to conduct market research, including online access to software for use in collecting, storing, and sharing data from consumer surveys. In 2016, it applied to register the mark FOCUSVISION in International Class 42 for:

> Providing temporary use of online non-downloadable software for conducting and analyzing market research; providing online non-downloadable software for use in data collection and data management in the field of market research; application service provider (ASP) featuring software for use in designing surveys for market research use; software as a service (SaaS) services featuring software for the collection, storage, organization, management, searching, manipulation and analysis of data in the fields of marketing, marketing research, and focus groups; software as a service (SaaS) services featuring software for management of marketing and market research projects, including creation and tracking of budgets for such projects and management of vendors.

U.S. Trademark Application Serial No. 86,967,294 (filed Apr. 7, 2016). The application states that FocusVision first used the mark for Class 42 service in June 2014. *Id.*[1]

IBI opposed FocusVision's application under 15 U.S.C. § 1052(d), arguing that FocusVision's mark created a likelihood of confusion with IBI's marks. In particular, IBI relied on two related IBI registrations, on the principal register, of the mark FOCUS. The first, dating to 1991, was Registration No. 1,652,265, for "[c]omputer programs for data[]base management." The second, dating to 2004, was Registration No. 2,821,942, for "[c]omputer software for database management," for "computer database programs for use in connection with decision support, analysis, and reporting programs," and for certain similarly characterized products. *See TTAB Opinion*, 2020 WL 3027606, at *1, *8.[2]

The Board evaluated the likelihood of confusion between IBI and FocusVision's marks using the factors set forth in *In re E.I. DuPont de Nemours & Co.*, 476 F.2d 1357, 1361 (CCPA 1973). The Board determined that many of the *DuPont* factors—including the similarity of the marks, the similarity of the goods and services, the similarity of the trade channels, the sales conditions and purchaser sophistication, and the strength of IBI's FOCUS marks—support a finding of likelihood of confusion, whereas the remaining likelihood-of-confusion factors were neutral. *TTAB Opinion*, 2020 WL 3027606, at *6–18. The Board's

---

[1]    FocusVision also sought to register its mark for certain services in International Classes 35 and 38. IBI did not oppose such registration, which is not at issue here.

[2]    IBI also relied on its registrations of WEBFOCUS marks, but the Board did not rule on the claim of likelihood of confusion with those marks, finding the analysis of likely confusion with IBI's FOCUS marks sufficient to deny registration. *See TTAB Opinion*, 2020 WL 3027606, at *7.

overall conclusion was that confusion was likely, and, on that basis, it denied registration of the FOCUSVISION mark. *Id.* at *19.

FocusVision timely appealed the Board's decision. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

## II

The Board's conclusion regarding likelihood of confusion is a question of law that we review de novo. *QuikTrip West, Inc. v. Weigel Stores, Inc.*, 984 F.3d 1031, 1034 (Fed. Cir. 2021). We review the Board's factual findings as to each *DuPont* factor for substantial-evidence support. *Id.* A finding has such support when a reasonable mind could reach it, *id.*, on the "'record as a whole, taking into account evidence that both justifies and detracts from an agency's decision,'" *Canfield Scientific, Inc. v. Melanoscan, LLC*, 987 F.3d 1375, 1378 (Fed. Cir. 2021) (quoting *In re Gartside*, 203 F.3d 1305, 1312 (Fed. Cir. 2000)).

On appeal, FocusVision challenges the Board's analysis regarding several *DuPont* factors, including the similarity of the marks, the similarity of the goods and services at issue, the similarity of the trade channels, the sales conditions and purchaser sophistication, the fame of IBI's FOCUS marks, the number and nature of similar marks in use on similar goods or services, and actual confusion.

## A

The first *DuPont* factor concerns the "similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression." *DuPont*, 476 F.2d at 1361. FocusVision argues that the Board improperly dissected its mark to concentrate on its FOCUS component, rather than considering its mark as a whole. FocusVision Opening Br. at 59–60. We see no impropriety.

As long as the Board considers "all of the features of the mark," "it is not improper to state that, for rational

reasons, more or less weight has been given to a particular feature of the mark, provided the ultimate conclusion rests on consideration of the marks in their entireties." *Packard Press, Inc. v. Hewlett-Packard Co.*, 227 F.3d 1352, 1357 (Fed. Cir. 2000). Here, the Board's analysis meets that standard. The Board accorded more weight to the first half, FOCUS, than to the second half, VISION, and provided a rational reason for doing so. Specifically, the Board noted that FocusVision's mark incorporates IBI's FOCUS mark in its entirety as the first half of its own mark and observed that "FOCUS also is the first term consumers would consider in perceiving, and in articulating [FocusVision]'s mark." *TTAB Opinion*, 2020 WL 3027606, at *13; *see also Century 21 Real Estate Corp. v. Century Life of America*, 970 F.2d 874, 876 (Fed. Cir. 1992) (finding that two marks' sharing of the same first term makes likelihood of confusion more likely). The Board also explained that the "addition of VISION" to FOCUS in FocusVision's mark does not "change the meaning of FOCUS" in the mark because "FOCUS exhorts the consumer to concentrate, although emphasizing that the focus is on a vision." *TTAB Opinion*, 2020 WL 3027606, at *13. FocusVision, we conclude, has not identified a reversible error in the Board's consideration of the mark as a whole in light of its lead part—identical to IBI's marks—and the mark's combination of the lead part with the remainder.

B

The second *DuPont* factor concerns the similarity of the goods and services at issue. *DuPont*, 476 F.2d at 1361. Here, the Board found that IBI's marks are not limited to any particular business use, so FocusVision's use for market research falls within the goods and services covered by IBI's marks. *See TTAB Opinion*, 2020 WL 3027606, at *8. This finding is supported by substantial evidence.

FocusVision's application describes services related to "providing online non-downloadable software for use in

data collection and data management in the field of market research" and "software as a service (SaaS) services featuring software for the collection, storage, organization, management, searching, manipulation and analysis of data in the fields of marketing, marketing research, qualitative and quantitative research and focus groups." U.S. Trademark Application Serial No. 86/967,294 (filed Apr. 7, 2016). IBI's registrations are for, among other things, "computer software for database management"; "computer software for use in decision support systems"; "computer software for use in enterprise reporting and analysis systems and for building applications for the management and tracking of data for enterprise reporting system"; and "computer database programs for use in connection with decision support, analysis, and reporting programs." Trademark Reg. No. 2,821,942. Thus, the goods and services identified in IBI's registration and FocusVision's application overlap, which supports the Board's determination that this factor weighs in favor of finding a likelihood of confusion. *See In re Detroit Athletic Co.*, 903 F.3d 1297, 1306 (Fed. Cir. 2018) ("[W]hile the goods and services are not identical, they substantially overlap, which weighs in favor of finding a likelihood of confusion.").

FocusVision argues that the Board conflated "database management" and "database programs" (IBI's goods) and "data collection and data management" (FocusVision's services). FocusVision Opening Br. at 41. We disagree. Even if FocusVision's services are not identical to IBI's goods, they are still closely enough related to support a finding of likelihood of confusion. *See Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369 (Fed. Cir. 2012) (explaining that likelihood of confusion can be supported if the goods or services are simply "related in some manner" (internal quotation marks omitted)). In fact, even FocusVision has used its mark for database software, and not "data collection and data management" alone. *See* FocusVision Opening Br. at 7 (describing use of FOCUSVISION mark

for "a software solution . . . for building and maintaining a member database").

FocusVision also argues that the Board erred in concluding that IBI's goods do not have a limited business use because IBI's goods involve "enterprise systems, intranet, and computer networks" rather than market research. *Id.* at 42–44. But FocusVision fails to explain how the fields identified in IBI's registration exclude goods for use in the field of market research as specified in FocusVision's application. Thus, the Board's factual finding that the goods and services overlap is supported by substantial evidence.

## C

The third and fourth *DuPont* factors involve a comparison of the parties' trade channels and classes of purchasers. *See DuPont*, 476 F.2d at 1361. The Board found that the trade channels and purchasers of FocusVision's services and IBI's goods were the same because IBI's registrations do not limit its channels of trade or classes of purchasers. *TTAB Opinion*, 2020 WL 3027606, at *9. For the same reasons as described above with respect to the second *DuPont* factor, we agree.

FocusVision contends, as to channels of trade, that it provides its pertinent services only through its own online portal. *See* FocusVision Opening Br. at 52. But we evaluate the *DuPont* channels-of-trade factor based on what is stated in the application and not the conditions that "exist in the real world." *See Detroit Athletic*, 903 F.3d at 1308. Here, FocusVision's registration does not set forth any restrictions on trade channels.

FocusVision argues, as to purchasers, that the relatively high prices of its and IBI's products mean that purchasers will exercise a high degree of care, which makes confusion less likely. FocusVision Opening Br. at 50. But even sophisticated purchasers may be confused by marks that are sufficiently similar. *See In re Shell Oil Co.*, 992

F.2d 1204, 1208–09 (Fed. Cir. 1993). And FocusVision's "prospective purchasers of its services include . . . buyers that do not have significant knowledge or experience with non-downloadable software for market research, or for use in data collection and management in the field of market research." *TTAB Opinion*, 2020 WL 3027606, at *15. Substantial evidence supports the Board's consideration of this factor as neutral rather than supporting FocusVision.

D

The fifth and sixth *DuPont* factors concern the fame of IBI's FOCUS marks and whether similar marks are used on similar goods. *See DuPont*, 476 F.2d at 1361. The Board found that the fifth factor slightly supports likelihood of confusion because IBI's FOCUS marks are inherently and commercially strong but not famous. *TTAB Opinion*, 2020 WL 3027606, at *9–11. The Board found the sixth factor to be neutral, determining that FocusVision introduced at most minimal evidence that third parties use similar marks for similar products or services. *Id.* at *11–12.

The Board correctly concluded that IBI's FOCUS marks are legally "presumed to be valid and at least suggestive." *Id.* at *9 (citing 15 U.S.C. § 1057(b)). FocusVision argues that the Board erred in determining that the marks were "at least suggestive" because descriptive marks may also be registered once they have acquired distinctiveness (*i.e.*, secondary meaning). FocusVision Opening Br. at 23. But IBI's marks were registered "*without* a required showing of acquired distinctiveness," *TTAB Opinion*, 2020 WL 3027606, at *9 (emphasis added), which means that, if the registrations are valid, the marks are not descriptive but are at least suggestive, *see StonCor Grp., Inc. v. Specialty Coatings, Inc.*, 759 F.3d 1327, 1332 (Fed. Cir. 2014) ("A mark that is 'suggestive' may be registered, but a mark that is 'merely descriptive' may not be registered without showing that it has acquired secondary meaning.").

Substantial evidence also supports the Board's finding that IBI's FOCUS marks are commercially strong. It relied on evidence provided by IBI of "considerable sales figures, hefty marketing expenditures and a degree of media attention over a period of several years." *TTAB Opinion*, 2020 WL 3027606, at *10–11. For instance, IBI presented evidence of its current annual sales, J.A. 131–32 ¶ 19 ($30 million attributable to FOCUS software), and its current annual marketing budget, J.A. 148–49 ¶ 82 ($2 million spent promoting FOCUS software). Although the evidence fell short of establishing fame, fame for purposes of likelihood of confusion is a matter of degree that "varies along a spectrum from very strong to very weak," *Joseph Phelps Vineyards, LLC v. Fairmont Holdings, LLC*, 857 F.3d 1323, 1325 (Fed. Cir. 2017) (internal quotation marks omitted), so that a mark may not be famous but may still be commercially strong. The Board's factual finding that IBI's FOCUS marks are inherently and commercially strong but not famous is supported by substantial evidence.

Relatedly, with respect to the sixth *DuPont* factor, the Board reasonably found that FocusVision's evidence was simply too thin to support its contention that IBI's marks are weak because of third-party marks. *TTAB Opinion*, 2020 WL 3027606, at *11–12 ("Merely listing the third-party 'Focus' marks, registration numbers, and recited goods and services (or portions thereof) in [FocusVision]'s Trial Brief was insufficient to make these registrations of record."). FocusVision argues that we may now take judicial notice of several third-party trademark registrations. FocusVision Opening Br. at 34–39. We decline to take judicial notice of these registrations and to consider evidence that was not properly presented before the Board in this circumstance, not least because mere registrations alone would not supply the context needed for evaluating FocusVision's argument. *See TTAB Opinion*, 2020 WL 3027606, at *11 (describing the procedures by which

FocusVision could have, but did not, make the third-party registrations of record); *see also K/S Himpp v. Hear-Wear Techs., LLC*, 751 F.3d 1362, 1367 (Fed. Cir. 2014) (declining to take judicial notice of a prior-art reference "and to expand the scope of our review beyond the grounds upon which the Board actually relied"). Substantial evidence supports the Board's finding that the sixth *DuPont* factor is neutral.

E

The seventh and eight *DuPont* factors concern actual confusion between the marks, specifically the "nature and extent of any actual confusion" and the "length of time during and conditions under which there has been concurrent use without evidence of actual confusion." *DuPont*, 476 F.2d at 1361. The Board found these factors to be neutral because no significant evidence had been presented of actual confusion (which might help IBI) or of the opportunity for actual confusion coupled with the absence of actual confusion (which might help FocusVision). *See TTAB Opinion*, 2020 WL 3027606, at *15–16.

The Board reasonably found lack of actual confusion to be a neutral factor. Lack of actual confusion tends to be more probative when the record indicates that the two marks are simultaneously used over an extended period of time. *See Han Beauty, Inc. v. Alberto-Culver Co.*, 236 F.3d 1333, 1338 (Fed. Cir. 2001) (finding Board did not err in not addressing lack of actual confusion when record did not show that the marks were used side-by-side for an extended period of time); *see also Wella Corp. v. Cal. Concept Corp.*, 558 F.2d 1019, 1023 (CCPA 1977) ("We do not agree with appellee that absence of instances of actual confusion is probative because, as noted by the board, there has been only a short period of time in which both parties have concurrently enjoyed commercial success in their operations." (internal quotation marks omitted)). Here, the relevant period during which actual confusion could have occurred

was relatively short—from June 2014 to January 2018 (*i.e.*, from when FocusVision claims it began using its mark in connection with its Class 42 Services to the close of IBI's rebuttal period). *TTAB Opinion*, 2020 WL 3027606, at *15. Thus, examples that FocusVision cites regarding use of its mark before 2014 are not helpful to FocusVision on this point. *See* FocusVision Opening Br. at 55. Without any evidence in the record to show that the marks were concurrently used over a sufficiently long period to make lack of confusion telling, we do not think that the Board erred in finding this factor neutral.

## F

We have been shown no error in the Board's finding of neutrality of the other *DuPont* factors. *See TTAB Opinion*, 2020 WL 3027606, at *16–18. And we see no error in the Board's ultimate weighing of the factors it found to favor IBI to reach a determination that confusion was likely.[3]

## III

For the foregoing reasons, we affirm the Board's decision and deny IBI's motion to strike.

**AFFIRMED**

---

[3]    IBI has moved to strike the terms "rent-seeking" and "trademark troll" from FocusVision's opening brief as scandalous matter. IBI Response Br. at 33–35. We deny the motion.