NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE: OXITENO S.A. INDUSTRIA E COMERCIO,**
*Appellant*

---

2022-1213

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 88865509.

---

Decided: March 9, 2023

---

MARY CATHERINE MERZ, Merz & Associates, PC, Oak Park, IL, for appellant.

CHRISTINA J. HIEBER, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee Katherine K. Vidal. Also represented by MARY L. KELLY, THOMAS W. KRAUSE, MATTHEW DERRICK MCCLELLAN, AMY J. NELSON, FARHEENA YASMEEN RASHEED, MARY BETH WALKER.

---

Before DYK, BRYSON, and PROST, *Circuit Judges*.

DYK, *Circuit Judge*.

2　　　　　　　　　IN RE: OXITENO S.A. INDUSTRIA E COMERCIO

Appellant Oxiteno S.A. Indústria e Comércio ("Oxiteno") appeals a decision of the Trademark Trial and Appeal Board ("Board") affirming the Examining Attorney's refusal to register the mark OXIPURITY for various chemical products. We *affirm*.

BACKGROUND

Oxiteno filed an intent-to-use trademark application for the mark OXIPURITY. The description of goods, as amended, included dozens of chemical products "for use in the pharmaceutical, veterinary, flavour and fragrance, and cosmetic fields."[1] J.A. 132.

---

[1] Oxiteno's full description of goods stated:

Chemical products for use in the manufacture of pharmaceuticals products, veterinary, flavour and fragrances, [and] cosmetic; chemical products namely, cetostearyl alcohol, cetyl alcohol, diethanolamine, diethylene glycol monoethyl ether, ethoxylated castor oil, fatty alcohol ethoxylated, fatty amine ethoxylates, glycerin, glyceryl monostearate, mixtures of surfactants medium-chain triglycerides, mineral oil, monoethanolamine, mpeg, nonylphenol ethoxylates, oleochemical products, petrolatum, phenoxyethanol, phosphate ester, polaxamer, polyethylene glycol, polyoxyethylene, alkyl ethers, polyoxyethylene, castor oil derivatives, polyoxyethylene, sorbitan fatty acid esters, polyoxyethylene stearates, sodium lauryl sulfate, solvents, sorbitan esters (sorbitan fatty acid esters), sorbitan esters ethoxylated, stearic acid, stearyl alcohol andtriethanolamine, for use in the manufacture of additives, pharmaceutical auxiliary, emulsifier, dispersant, humectant, adjuvant and solvents; all of the aforementioned products for use

The Examining Attorney refused to register the mark due to a likelihood of confusion with a previously registered OXYPURE mark.  The OXYPURE mark, registered by FMC Corporation, covers "hydrogen peroxide intended for use in the treatment of public and private potable water systems and supplies."  J.A. 50 (capitalization changed). The Examining Attorney found OXIPURITY and OXYPURE to be similar marks, leading to a likelihood of confusion.  Although the goods covered by the earlier registration and the application were not identical, the Examining Attorney found the goods to be related based on third-party websites that marketed both hydrogen peroxide (the goods covered by FMC's OXYPURE mark) and one or more of the chemicals that Oxiteno sought to be covered by the OXIPURITY mark.  Oxiteno filed a response challenging the Examining Attorney's refusal and offering evidence in support of its position.  The Examining Attorney issued a final refusal.

Oxiteno appealed to the Board. The Board considered the likelihood of confusion factors laid out in *Application of E. I. DuPont DeNemours & Co.* (*DuPont*), 476 F.2d 1357, 1361 (CCPA 1973).  Regarding the first *DuPont* factor, similarity of the marks, the Board found the marks to be "similar in sound, meaning and commercial impression."  J.A. 5.  Accordingly, the Board found that this factor "strongly favors a finding of likelihood of confusion."  J.A. 7.

The Board then considered the second and third *DuPont* factors, the similarity of the goods and channels of trade, and found that the goods are different but related. The Board found that the third-party websites "establish that [Oxiteno's] chemicals and [FMC's] hydrogen peroxide

---

in the pharmaceutical, veterinary, flavour and fragrance, and cosmetic fields.

J.A. 132.

are commonly manufactured by a single source, and are sold directly to a variety of industries, including the waste treatment, pharmaceutical, biotech, and personal care industries." J.A. 9–10. The Board also relied on FMC's brochure, which stated that FMC offered other hydrogen peroxide products, albeit under different brand names, to industries such as the drugs/cosmetics industry.

In its consideration of the fourth *DuPont* factor, "[t]he conditions under which and buyers to whom sales are made, i.e. 'impulse' vs. careful, sophisticated purchasing," *DuPont*, 476 F.2d at 1361, the Board found that the nature of the goods—chemical products used in manufacturing other products—suggested that the consumers would be sophisticated.

The Board weighed the relevant *DuPont* factors and found a likelihood of confusion. Although the consumers were sophisticated, the Board found that "[t]he strong similarity of the marks for related goods, which move in the same channels of trade to the same classes of customers renders confusion likely." J.A. 13.

### DISCUSSION

Under the Lanham Act, the Patent and Trademark Office ("PTO") can refuse to register a mark if the mark "so resembles a mark registered in the Patent and Trademark Office . . . as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1052(d). Likelihood of confusion is a legal conclusion based on underlying factual findings regarding the *DuPont* factors. *QuikTrip W., Inc. v. Weigel Stores, Inc.*, 984 F.3d 1031, 1034 (Fed. Cir. 2021). We review the Board's factual findings for substantial evidence and the weighing of the *DuPont* factors *de novo*. *Id.*

Oxiteno's primary contention is that the actual or potential consumers for the products covered by the

application and the registration are not the same and thus there is no likelihood of confusion. The Board found that the relevant goods would be "purchased by scientists, chemists, and manufacturers." J.A. 12. Oxiteno does not dispute this finding. Instead, it argues that the scientists, chemists, and manufacturers purchasing Oxiteno's products in the pharmaceutical, veterinary, flavor and fragrance, or cosmetic fields are not the same scientists, chemists, and manufacturers purchasing FMC's hydrogen peroxide for potable water systems. Oxiteno's argument falls short for two reasons.

First, typically the inquiry focuses on "whether there is likely to be sufficient overlap of the respective purchasers of the parties' goods and services to confuse actual and potential purchasers," *Elec. Design & Sales, Inc. v. Elec. Data Sys. Corp.*, 954 F.2d 713, 716 (Fed. Cir. 1992). But it is not necessary to show that the consumers are the same to establish a likelihood of confusion. The knowledge of the actual or potential purchasers potentially leading to source confusion is not limited to knowledge generated in purchase transactions. *See* 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:5 (5th ed., 2022). Though the buyers may be different, they may have overlapping knowledge due to market conditions or channels of trade such that purchasers are familiar with both products. *See In re Shell Oil Co.*, 992 F.2d 1204, 1207 (Fed. Cir. 1993) ("It is relevant to consider the degree of overlap of consumers exposed to the respective services, for . . . even when goods or services are not competitive or intrinsically related, the use of identical marks can lead to the assumption that there is a common source."). Trademark law is concerned with "confusion as to source, sponsorship, affiliation, endorsement, or connection between the applicant's goods and the owner of the registered mark," *In re Rittenhouse*, 124 F.3d 228 (Fed. Cir. 1997) (unpublished table decision) (citing 3 J. Thomas McCarthy, *McCarthy on*

*Trademarks and Unfair Competition* § 24:6 (1997)), even in the absence of consumer overlap.

Here, even to the extent that the buyers are different, the goods are related (the second *DuPont* factor), and there is evidence that they are sold in the same channels of trade (the third *DuPont* factor). Several specialty websites sell the chemicals for which Oxiteno seeks its OXIPURITY mark as well as hydrogen peroxide, the chemical covered by FMC's registration. The fact that "a single company sells the goods and services of both parties . . . is relevant to a relatedness [*DuPont* factor two] analysis." *Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1267 (Fed. Cir. 2002).

Second, there is record evidence that there is consumer overlap, i.e., to some extent the same customers would purchase both Oxiteno's and FMC's goods. Seidler Chemical, a bulk chemical supplier that offers many of the chemicals for which Oxiteno seeks its OXIPURITY mark, states that "[n]early every business has a need for either purification of water for the manufacturing process, or to clean a waste stream/effluent," J.A. 125, that is, every business is a potential purchaser of hydrogen peroxide for water purification purposes. FMC's brochure states that it sells hydrogen peroxide products, albeit under different trade names, to the food processing/packaging and drugs/cosmetics industries. Thus, substantial evidence supports the conclusion that at least some of the consumers would be the same.

Oxiteno argues that, even if the same institution or manufacturer were to purchase both products, "purchasers would fall in completely different departments." Appellant's Br. 15. While evidence that purchasing occurred within different departments of the same corporation is relevant, *Elec. Design*, 954 F.2d at 717–18, there is no record evidence showing that purchasing occurs here in different departments of the same institution. Substantial evidence

supports the Board's overall likelihood of confusion determination.

## CONCLUSION

We have considered Oxiteno's remaining arguments and find them unpersuasive. The Board's decision is affirmed.

**AFFIRMED**