NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**TREK BICYCLE CORPORATION,**
*Appellant*

**v.**

**CHRISTINA ISAACS,**
*Appellee*

---

2022-1434

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 91232164.

---

Decided: November 15, 2023

---

MARY CATHERINE MERZ, Merz & Associates, PC, Oak Park, IL, for appellant.

DAVID ALLEN LOWE, Lowe Graham Jones PLLC, Seattle, WA, for appellee.

---

Before STOLL, SCHALL, and CUNNINGHAM, *Circuit Judges.*

CUNNINGHAM, *Circuit Judge.*

Trek Bicycle Corporation ("Trek") appeals from a decision of the Trademark Trial and Appeal Board ("Board") dismissing Trek's opposition to Ms. Christina Isaacs's registration of the RANGER TREK standard character mark and the RANGER TREK design mark. *Trek Bicycle Corp. v. Isaacs*, Opp'n No. 91232164, 2021 WL 3468080 (T.T.A.B. Aug. 4, 2021) ("*Decision*"). The Board found that Trek failed to show, by a preponderance of the evidence, the existence of a likelihood of confusion. *See Decision* at \*17. Because substantial evidence supports the Board's findings as to the challenged *DuPont* factors and the Board did not err in weighing the *DuPont* factors, we *affirm*.

## I. BACKGROUND

In August 2016, Ms. Isaacs filed three trademark applications. *See* J.A. 2257–61 (U.S. Trademark App. Serial No. 87/123,067), 2271–75, 2268 (U.S. Trademark App. Serial No. 87/123,082), 2285–89, 2282 (U.S. Trademark App. Serial No. 87/123,091); *Decision* at \*1 & nn.1–3. Two of the applications are at issue in this appeal: U.S. Trademark Application Serial No. 87/123,067 for the RANGER TREK standard character mark and U.S. Trademark Application Serial No. 87/123,091 for the RANGER TREK design mark (collectively, the "RANGER TREK marks").[1]    *See*

---

[1]    Trek does not appeal the Board's decision as to U.S. Trademark Application Serial No. 87/123,082 for the RANGER TREK EXPEDITION JOURNALS design mark. *See* Appellant's Br. 3; Appellee's Br. 9–10; J.A. 2271.

Appellant's Br. 3; J.A. 2257, 2285. The RANGER TREK design mark is depicted below:



J.A. 2279, 2282. Ms. Isaacs sought registration of the RANGER TREK marks for use with various international classes of goods and services, only some of which are now on appeal: namely, backpacks, hiking bags, sports bags, and travel bags in International Class 18 and hats, jackets, and shirts in International Class 25 (the "identified goods").[2] *See* Appellant's Br. 8, 24; J.A. 2257, 2259–60; J.A. 2285, 2287; *Decision* at *1.

Trek filed a Notice of Opposition, asserting that the RANGER TREK marks as used in connection with the identified goods would cause a likelihood of confusion with Trek's previously used and registered TREK and TREK-formative marks and TREK trade name. *See Decision* at *2; J.A. 100–16. Some examples of Trek's registered marks are Trademark Registration No. 2745442 for the TREK mark for various bicycling apparel in International Class No. 25, *see* J.A. 103–04, Trademark Registration No. 3053077 for the TREK mark for backpacks and other various bags in International Class No. 18, *see* J.A. 105, and Trademark Registration No. 3979036 for the TREK

---

[2]    Trek does not appeal the Board's decision as to the goods and services in other international classes. *See* Appellant's Br. 8, 24.

design mark for various cycling apparel in International Class No. 25 that is depicted below:



J.A. 110; *see Decision* at *5.

In August 2021, the Board dismissed Trek's opposition. *See Decision* at *17. The Board concluded that "[t]he subject applications and [Trek]'s registrations contain identical and legally identical goods in International Classes 18 and 25"—*i.e.*, the identified goods. *See id.* at *7. The Board evaluated the likelihood of confusion between the parties' marks under the factors set forth in *In re E.I. DuPont DeNemours & Co.*, 476 F.2d 1357, 1361 (CCPA 1973) ("the *DuPont* factors") for which there were argument and evidence.[3] *See Decision* at *6; *see also id.* at *7–17. The Board

---

[3]    "The thirteen factors are as follows:  (1) similarity of the marks; (2) similarity and nature of goods described in the marks' [applications or] registrations; (3) similarity of established trade channels; (4) conditions of purchasing; (5) fame of the prior mark; (6) number and nature of similar marks in use on similar goods; (7) nature and extent of actual confusion; (8) length of time and conditions of concurrent use without evidence of actual confusion; (9) variety of goods on which mark is used; (10) market interface between applicant and owner of a prior mark; (11) extent to which [the] applicant has a right to exclude others from use of its mark; (12) extent of potential confusion; and (13) any other established probative fact on effect of use." *Zheng Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 1371 n.2 (Fed. Cir. 2018) (citing *DuPont*, 476 F.2d at 1361).

found that "the differences between the marks [were] sufficient to avoid likely confusion despite the identical goods and trade channels and the fame of [Trek's] marks for bicycles, in particular given the differences in overall commercial impression." *Id.* at *16. Accordingly, the Board concluded that Trek failed to show the existence of a likelihood of confusion by a preponderance of the evidence. *See id.* at *17.

Trek subsequently filed a Request for Reconsideration and challenged the Board's dismissal with respect to the RANGER TREK marks for the identified goods. *See* J.A. 6000–07. The Board denied the request. J.A. 46–52 at 52 ("*Reconsideration Decision*").

Trek appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

## II.  DISCUSSION

Section 2(d) of the Lanham Act prohibits the registration of a mark if it is "likely, when used on or in connection with the goods of the applicant, to cause confusion" with another registered mark. 15 U.S.C. § 1052(d); *see QuikTrip West, Inc. v. Weigel Stores, Inc.*, 984 F.3d 1031, 1034 (Fed. Cir. 2021). "Likelihood of confusion is a question of law based on underlying factual findings regarding the *DuPont* factors." *Spireon, Inc. v. Flex Ltd.*, 71 F.4th 1355, 1362 (Fed. Cir. 2023) (citing *In re I.AM.Symbolic, LLC*, 866 F.3d 1315, 1322 (Fed. Cir. 2017)). "We review the Board's factual findings on each relevant *DuPont* factor for substantial evidence, but we review the Board's weighing of the *DuPont* factors de novo." *QuikTrip*, 984 F.3d at 1034 (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Zheng Cai*, 901 F.3d at 1371 (internal quotation marks and citation omitted). "Not all of the *DuPont* factors are necessarily relevant or of equal weight in a given case, and any one of the factors may control a particular case." *Tiger Lily Ventures Ltd. v. Barclays*

*Capital Inc.*, 35 F.4th 1352, 1362 (Fed. Cir. 2022) (internal quotation marks and citation omitted). We only need to consider the *DuPont* factors of significance to the particular mark in the likelihood of confusion analysis. *Id.* (citation omitted).

On appeal, Trek challenges the Board's factual findings that: (1) the differences between the parties' marks support a finding of no confusion (*DuPont* factor one); (2) Trek's TREK mark is not famous as to the identified goods (*DuPont* factor five); (3) Trek's TREK mark is not commercially strong as to the identified goods and is somewhat conceptually weak as to the identified goods (*DuPont* factor six);[4] and (4) the prosecution of Trek's application, U.S. Trademark Application Serial No. 87/565,645, which matured into Trademark Registration No. 6036046 ("the 87/565,645 prosecution"), J.A. 99, supports a finding of no confusion (*DuPont* factor thirteen).[5] *See* Appellant's Br. 9, 12, 22–25, 42; *see also Decision* at *9–16; *Reconsideration Decision* at J.A. 49–52. Trek also challenges the Board's

---

[4]    Although Trek raises commercial and conceptual strength arguments, it does not present such arguments under *DuPont* factor six as it should. *See* Appellants' Br. 22–25, 42; *Spireon*, 71 F.4th at 1362–63 (explaining that commercial and conceptual strength are analyzed under *DuPont* factor six). We address Trek's commercial and conceptual strength arguments under *DuPont* factor six.

[5]    Trek contends that the Board erred by failing to consider the argument and evidence concerning *DuPont* factor *eight* raised during the 87/565,645 prosecution. *See* Appellant's Br. 25–30. The Board analyzed and made its factual findings as to the 87/565,645 prosecution under "other established facts," *i.e.*, *DuPont* factor *thirteen*. *See Decision* at *15–16; *Reconsideration Decision* at J.A. 50–52. We similarly address the arguments concerning the 87/565,645 prosecution under *DuPont* factor thirteen.

weighing of the *DuPont* factors.  *See* Appellant's Br. 9; *see also Decision* at \*16.  We address each argument in turn.

## A.   *DuPont* Factor One

Under *DuPont* factor one, we consider "whether the marks are sufficiently similar in terms of their commercial impression such that persons who encounter the marks would be likely to assume a connection between the parties." *I.AM.Symbolic*, 866 F.3d at 1323 (citation omitted). "Commercial impression" refers to "the ultimate conclusion of similarity or dissimilarity of marks resulting from a comparison of their appearance, sound, and meaning." *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1372 (Fed. Cir. 2005) (citations omitted).

The Board found that *DuPont* factor one weighed against a likelihood of confusion because the RANGER TREK marks are dissimilar from Trek's marks "in appearance, sound, connotation and commercial impression." *Decision* at \*14.  Trek unpersuasively argues this finding is not supported by substantial evidence for multiple reasons. First, Trek contends that the Board erred by conflating, rather than independently evaluating, the RANGER TREK marks.  *See* Appellants Br. 9.  We disagree.  The Board considered both of the RANGER TREK marks and their respective attributes in reaching its conclusion that *DuPont* factor one weighs against finding likely confusion.  *See Decision* at \*11–14.

Second, Trek argues that the Board incorrectly found that the addition of "RANGER" to "TREK" in the RANGER TREK marks resulted in the parties' marks having "a different overall commercial impression, sufficient to avoid likely confusion." *Decision* at \*14; *see* Appellant's Br. 9, 15, 19.  Trek contends that the word "TREK" is "the dominant portion" of the RANGER TREK marks, and the Board thus erred in failing to assign greater weight to the word "TREK" present in both parties' marks.  *See* Appellant's Br.

21. We disagree. When marks are structurally similar, a mark's lead word may be the "dominant portion" of the mark and is "likely to make the greatest impression on consumers" because consumers typically notice the first word of a mark first. *In re Detroit Athletic Co.*, 903 F.3d 1297, 1303 (Fed. Cir. 2018) (citing *Palm Bay*, 396 F.3d at 1372). Because "RANGER" is the lead word in the RANGER TREK marks, the Board reasonably found that "RANGER" was "more dominant" over "TREK," which weighed against a likelihood of confusion. *See Decision* at *14; *see Palm Bay*, 396 F.3d at 1371–72 (finding that the word "VEUVE" in the VEUVE CLICQUOT mark was "a 'prominent feature'" as the first word in the mark and "the dominant feature" in the commercial impression of the mark).

As part of its *DuPont* factor one determination, the Board also reasonably concluded that the parties' marks differed in their overall commercial impression because "TREK by itself simply references a journey or hike" whereas "RANGER TREK evokes . . . a specific type of person with a mission on a RANGER TREK." *Decision* at *14. Trek appears to challenge this finding, arguing that "Trek's presence of its TREK name and marks in parks in the United States is enormous [and] diminish[es] any meaningful distinction" between the parties' marks. *See* Appellants Br. 16.  In support, Trek points to evidence concerning Trek's bicycles designed for park and public trail use, dealers and bicycle shops located near parks that sell and rent Trek's bicycles, and Trek's various efforts supporting bicycling in parks. *Id.* at 16–19.  However, this evidence generally concerns bicycles and bicycling services, not the identified goods on appeal.  Trek's argument is therefore unpersuasive.

Lastly, with respect to the RANGER TREK design mark, Trek argues that the Board erred by assigning too much weight to the design rather than the words. *See* Appellant's Br. 9, 14–15. We disagree. While words are "normally accorded greater weight" in a composite mark

containing both words and a design, "there is no general rule that the letter portion of the mark will form the dominant portion of the mark." *In re Viterra Inc.*, 671 F.3d 1358, 1362 (Fed. Cir. 2012) (citations omitted). And contrary to Trek's characterization of the Board's analysis, the Board did not disproportionately weigh the RANGER TREK design mark's visual elements. *See Decision* at *14. Rather, the Board explained that the RANGER TREK design had a very different shape from Trek's shield design and that the RANGER TREK design merely "*amplifie[d]* the RANGER connotation" by "depicting children heading out on a hike in ranger outfits." *Id.* (emphasis added).

Accordingly, substantial evidence supports the Board's finding that the dissimilarities between the RANGER TREK marks and Trek's marks for the identified goods weigh against a likelihood of confusion.

### B.   *DuPont* Factors Five and Six

#### i.   Fame and Commercial Strength

Under *DuPont* factor five, a famous mark has "extensive public recognition and renown." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1367 (Fed. Cir. 2012) (quoting *Bose Corp. v. QSC Audio Prods. Inc.*, 293 F.3d 1367, 1371 (Fed. Cir. 2002)). "Fame for purposes of likelihood of confusion is a matter of degree that 'varies along a spectrum from very strong to very weak.'" *Id.* (quoting *Palm Bay*, 396 F.3d at 1375). "Relevant factors include sales, advertising, length of use of the mark, market share, brand awareness, licensing activities, and variety of goods bearing the mark." *Id.* (citations omitted); *see also Bose*, 293 F.3d at 1371; *Spireon*, 71 F.4th at 1362.

And under *DuPont* factor six, "[t]here are two prongs of analysis," one of which is commercial strength. *Spireon*, 71 F.4th at 1362 (citations omitted). Commercial strength "is the marketplace recognition value of the mark" and "is a question of whether consumers in fact associate the mark

with a unique source." *Id.* at 1363 (cleaned up). Similar to fame, commercial strength can be shown by "advertising and marketing, and sales." *Id.* (citation omitted); *see also FocusVision Worldwide, Inc. v. Info. Builders, Inc.*, 859 F. App'x 573, 577–78 (Fed. Cir. 2021) (analyzing same sales and marketing expenditures evidence for fame and commercial strength determinations).

The Board found that Trek's TREK mark "is famous for bicycles and bicycle accessories" and that Trek "demonstrate[d] the commercial strength of the TREK mark for bicycles," *Decision* at *10, but that such fame and commercial strength did not extend to the identified goods. *See id.*; *Reconsideration Decision* at J.A. 49–50, 52. Trek argues that the Board erred by discounting its evidence of sales and marketing expenditures that allegedly show the fame and commercial strength of Trek's TREK mark for the identified goods. *See* Appellant's Br. 9, 30; *see also id.* at 31–43.

We disagree. The Board explained that Trek proffered evidence of "the length of time it has sold clothing (since 1988) and bags (1993), the amount of sales in dollar figures, and total marketing expenditures." *Reconsideration Decision* at J.A. 49–50. Specifically, Trek provided its sales figures for bags and clothing products sold in the United States in 2011 through 2018, *see* J.A. 6232; J.A. 3068–75, and its marketing expenditures for North America during the same time period. *See* J.A. 6234; J.A. 3075–77. The Board properly discounted this evidence, explaining that "raw numbers of product sales and advertising expenses"—like Trek's evidence—"may have sufficed in the past to prove fame of a mark, but raw numbers alone in today's world may be misleading." *Reconsideration Decision* at J.A. 50 (quoting *Bose*, 293 F.3d at 1375).

Trek correctly recognizes that although raw numbers of product sales and advertising expenses may be misleading, the opposer can introduce evidence to contextualize

these numbers. *See* Appellant's Br. 31–32 (citing *Bose*, 293 F.3d at 1375); *see also Omaha Steaks Int'l, Inc. v. Greater Omaha Packing Co.*, 908 F.3d 1315, 1320 (Fed. Cir. 2018) (explaining that the opposer "provided considerable contextual evidence of the type of advertisements and promotions it uses to gain sales"). Trek argues that the Board's analysis was "legally flawed" because the Board disregarded Trek's "considerable contextual evidence for the type of advertisements and promotions it has used to gain sales." Appellant's Br. 31–32, 35; *see also id.* at 33–34, 38. However, we have reviewed Trek's briefing before the Board, and it appears that Trek never raised this specific argument below and thus forfeited it. *See* J.A. 6290–341 (Trek's Opening Trial Brief); J.A. 5947–71 (Trek's Reply Trial Brief); J.A. 6000–06 (Trek's Request for Reconsideration); *California Ridge Wind Energy LLC v. United States*, 959 F.3d 1345, 1351 (Fed. Cir. 2020) ("We may deem an argument forfeited when a party raises it for the first time on appeal.") (citations omitted). Regardless, if we consider Trek's argument, it does not detract from the Board's conclusion that "[t]he evidence does not support a finding that TREK is famous for the types of goods identified in the subject applications." *Decision* at *10. For example, the Board noted that Trek's evidence of marketing expenditures was "not broken down by product and [did] not appear to be for only clothing and bags." *Reconsideration Decision* at J.A. 50. Accordingly, Trek has failed to show that the Board's findings on fame and commercial strength with respect to the identified goods are not supported by substantial evidence.

### ii. Conceptual Strength

The other prong of the *DuPont* factor six analysis is conceptual strength, which "is a measure of a mark's distinctiveness." *Spireon*, 71 F.4th at 1362 (citations omitted). "[D]istinctiveness is often classified in categories of generally increasing distinctiveness: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Id.* (cleaned

up).  "[S]uggestive marks suggest, but do not directly and immediately describe, some aspect of the goods[.]"  *Id.* (cleaned up).  Marks that are "highly suggestive are entitled to a narrower scope of protection, *i.e.*, are less likely to generate confusion over source identification, than their more fanciful counterparts."  *Id.* (citations omitted).

The Board found that Trek's TREK mark is somewhat conceptually weak and somewhat suggestive as to the identified goods.  *See Decision* at *11, *14.  Trek argues that "[t]here simply is nothing in the record to support the Board's reasoning" on this point.  Appellant's Br. 24; *see also id.* at 22–23.  We do not agree.  The Board's conclusion is supported by dictionaries defining "trek" as "an arduous journey" or "difficult journey, hike or trip," as well as third-party registrations containing the word "TREK" for the identified goods.  *See Decision* at *10–11.  Dictionary definitions and third-party registrations can show that a mark is suggestive.  *See QuikTrip*, 984 F.3d at 1035 (finding that "kitchen" is a "highly suggestive, if not descriptive" word based on evidence of dictionary definitions and third-party registrations, among other evidence); *see also Juice Generation, Inc. v. GS Enters. LLC*, 794 F.3d 1334, 1339 (Fed. Cir. 2015).  Moreover, third-party registrations "show the sense in which a mark is used in ordinary parlance, that is, some segment that is common to both parties' marks may have a normally understood and well-recognized . . . suggestive meaning, leading to the conclusion that that segment is relatively weak."  *Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.*, 797 F.3d 1363, 1374 (Fed. Cir. 2015) (cleaned up).  Accordingly, the Board reasonably relied on and found that certain dictionary definitions and third-party registrations showed that Trek's TREK mark is somewhat conceptually weak and somewhat suggestive for the identified goods.  *See Decision* at *11, *14.

Trek argues that any reliance on third-party registrations is improper because two third-party registrations on

which the Board based its conclusion have been canceled since the Board's decision and asks us to take judicial notice of these canceled registrations. *See* Appellant's Br. 24–25; ECF No. 12. We deny Trek's motion for judicial notice. Even if we took judicial notice of the canceled registrations, such notice would not change the outcome or discount the dictionary definitions and at least one other third-party registration for the identified goods on which the Board relied and which provide substantial evidence for the Board's finding. *See Decision* at *11; J.A. 3467 (third-party registration of the STAR TREK SKELE-TREKS mark for clothing including shirts in International Class 25). Regardless, any alleged error by the Board in finding that Trek's TREK mark is somewhat conceptually weak and somewhat suggestive for the identified goods would be harmless because it appears that the Board concluded there was no likelihood of confusion without accounting for this finding. *See Decision* at *14 ("[E]ven ignoring the somewhat conceptually weak nature of the word TREK in connection with the various Class 18 and 25 goods . . . to the extent it suggests they are for trekking or simply evokes the idea of trekking, we find the marks are not confusingly similar when used on the [identified] goods[.]"). Accordingly, we find Trek's arguments on conceptual strength under *DuPont* factor six unpersuasive.

## C.  *DuPont* Factor Thirteen

Under *DuPont* factor thirteen, courts consider "any other established fact probative of the effect of use." *QuikTrip*, 984 F.3d at 1036 (quoting *DuPont*, 476 F.2d at 1361). Trek contends that the Board erred in finding that the 87/565,645 prosecution for the TREK standard character mark supports a finding of no confusion. *See* Appellant's Br. 9, 25–30; J.A. 99 (TREK standard character mark). Specifically, Trek argues that the Board erred by failing to consider the argument and evidence concerning actual confusion (*DuPont* factor eight) raised during the 87/565,645 prosecution. *See* Appellant's Br. 27–30. We disagree.

During the 87/565,645 prosecution, the United States Patent and Trademark Office refused registration for the TREK standard character mark for apparel due to likely confusion with five registered marks containing the word "TREK" for various footwear and clothing. *See* J.A. 3791–95; *Decision* at \*16. Trek overcame this objection, arguing in part that if the five registered marks containing the word "TREK" can coexist with one other, then the proposed TREK standard character mark can also coexist with the five registered marks. *See* J.A. 3774–77; *Decision* at \*16; J.A. 3772 (Trek arguing that "years of peaceful coexistence (according to the 8th DU PONT [sic] factor . . .) weigh strongly in favor of the registration of TREK"); *see also* J.A. 3766, 3769. The 87/565,645 prosecution was presented to the Board below as evidence for no likely confusion between Trek's marks and the RANGER TREK marks, and the Board agreed, finding that "given the various 'trek' marks registered for similar or related goods, it would seem [that the RANGER TREK] marks, where the addition of 'RANGER' creates a sufficient distinction, may coexist as well." *Decision* at \*16; *see also Reconsideration Decision* at J.A. 50–52.

Contrary to Trek's arguments raised on appeal, we find that the Board sufficiently considered the argument and evidence concerning actual confusion (*DuPont* factor eight) raised during the 87/565,645 prosecution and that substantial evidence supports the Board's interpretation of the 87/565,645 prosecution. Moreover, even if the Board did err in its interpretation, this error would be at most harmless because the Board explained that "the absence of these 'other established facts' [under *DuPont* factor thirteen] would not change the result" of no likely confusion. *Reconsideration Decision* at J.A. 52. Trek's arguments on *DuPont* factor thirteen are unpersuasive.

### D.    Weighing of the *DuPont* Factors

The Board weighed the *DuPont* factors and determined that "the differences between the [parties'] marks [were] sufficient to avoid likely confusion despite the identical goods and trade channels and the fame of [Trek's] marks for bicycles, in particular given the differences in overall commercial impression." *Decision* at *16.  In other words, the Board gave *DuPont* factor one decisive weight.  *See id.*  Trek challenges such weighing, arguing that the Board erred by placing too much weight on the dissimilarities between the marks (*DuPont* factor one) and by failing to give sufficient weight to the fame and commercial strength of Trek's mark as to the identified goods (*DuPont* factors five and six).  *See* Appellant's Br. 3, 9, 30–31, 34–35, 43.  We are unpersuaded.

First, in order to give any favorable weight to *DuPont* factors five and six, we must find that the fame and commercial strength of Trek's TREK mark *does* extend to the identified goods, which it does not.  Second, we do not agree with Trek's argument that the Board gave *DuPont* factor one undue weight.  "One *DuPont* factor may be dispositive in a likelihood of confusion analysis, especially when that single factor is the dissimilarity of the marks."  *QuikTrip*, 984 F.3d at 1037 (internal quotation marks and citation omitted).  We see no error in the Board's determination that "the differences between the [parties'] marks [were] sufficient to avoid likely confusion," *Decision* at *16, "especially given the Board's findings that the marks noticeably differed in appearance, sound, connotation, and commercial impression."  *QuikTrip*, 984 F.3d at 1037; *see Decision* at *14 (finding the marks to be "dissimilar[] in appearance, sound, connotation and commercial impression").  Therefore, the Board did not err in weighing the *DuPont* factors.

## III. CONCLUSION

We have considered Trek's remaining arguments and find them unpersuasive. For the foregoing reasons, we *affirm* the Board's decision.

**AFFIRMED**